## Boswell, Appellant, *v.* Buhl.

*Corporation—Stock—Shareholders—Agreement as to sale of stock—Contract—Equity.*

On a bill in equity for an injunction it appeared that the plaintiff and the seven individual defendants were the owners of all of the common stock of a corporation, which was also a party defendant. By the charter and by-laws of the corporation the holders of the common stock had the management of the affairs of the corporation, and all of the eight individual parties were actively engaged in some capacity in the management of the business of the company. These parties entered into an agreement in writing in which they recited that it was deemed advisable that the common stock should be held only by those actively engaged in the management of the company, and they agreed to hold the stock on the following terms and conditions: (*a*) If the holder of stock ceases to be a desirable associate or voluntarily resigns his position, the holders of a majority of the stock may appraise and purchase his stock which "shall be divided or distributed among the holders of said common stock in proportion to the amounts of stock held by each;" (*b*) if the holder of any stock desires to sell it, he must first offer it to the holders of the balance of the stock at a cash price to be determined by the holders of a majority of the stock, at which price they may buy it, "and distribute same among said holders in proportion to the amount of their respective holdings;" and if they refuse to purchase it at the price, the owner may sell it in open market; (*c*) the common stock "shall be under the control of and subject to the vote or decision of the majority of said stock." Two of the defendants who owned between them a controlling interest in the stock, proposed to sell a portion of it to the five other defendants, thus excluding the plaintiff. *Held*, that under a proper interpretation of the contract the stock proposed to be sold must be offered to all of the holders of the common stock, including the plaintiff, but that the plaintiff was not entitled to a share in the distribution in such a way as to exclude each of the two selling stockholders from sharing in the stock which the other proposed to sell.

Argued Oct. 27, 1905. Appeal, No. 119, Oct. T., 1905, by plaintiff, from decree of C. P. No. 2, Allegheny Co., July T., 1904, No. 1035, dismissing bill in equity in case of George B. Boswell v. Boggs & Buhl, a corporation, Russell H. Boggs, Henry Buhl, Jr., J. F. McCandless, A. Bion Boggs, David Roney, Elizabeth B. Rae and William B. Denny. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an injunction.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*William B. Rodgers*, with him *Edwin S. Craig*, for appellant.—The court had jurisdiction: Northern Cent. Ry. Co. v. Walworth, 193 Pa. 207 ; Lindsay's Estate, 210 Pa. 224 ; Rigg v. Reading, etc., St. Ry. Co., 191 Pa. 298 ; Goodwin Gas Stove, etc., Co.'s App., 117 Pa. 514 ; Rumsey v. R. R. Co., 203 Pa. 579 ; Fitzsimmons v. Lindsay, 205 Pa. 79 ; Ralston v. Ihmsen, 204 Pa. 588.

*John S. Ferguson*, with him *Ed. G. Hartje*, for appellee.— Specific performance ought not to be enforced by injunction, where the injury liable to result from its non-enforcement is not actual and material : Morgan v. City of Binghamton, 102 N. Y. 500 (7 N. E. Repr. 424) ; Genet v. D. & H. Canal Co., 122 N. Y. 505 (25 N. E. Repr. 922) ; Nash v. Towne, 72 U. S. 689 ; Reed v. Ins. Co., 95 U. S. 23.

The court below properly construed the contract : Case v. Cushman, 3 W. & S. 544 ; McLarren v. Robertson, 20 Pa. 125 ; Codding v. Wood, 112 Pa. 371 ; Streator v. Paxton, 201 Pa. 135 ; Weise's App., 72 Pa. 351 ; Postal Tel. Cable Co. v. W. U. Tel. Co., 155 Ill. 335 (40 N. E. Repr. 587) ; Consolidated Coal Co. v. Schmisseur, 135 Ill. 371 (25 N. E. Repr. 795) ; Kemp v. Bird L. R., 5 Ch. Div. 549.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1906 :

The validity of the contract involved in this controversy has not been attacked, nor is any question raised by the pleadings as to the jurisdiction of the court below. We may say, however, that, under our decisions, the circumstances of the case fully warrant a court of equity in assuming jurisdiction. The rights of the parties depend upon the construction of their agreement and that is the controlling question involved in this litigation.

The contract is dated April 20, 1899, and was signed by the holders of all the common stock of the corporation. By its charter and by-laws the holders of the common stock have the control and management of the affairs of the corporation. The agreement recites this fact, and, further, that the parties thereto are actively engaged in the business of the corporation and are holding positions of trust and responsibility in its management, and that " it is deemed advisable by the

parties hereto that the common stock of said corporation shall be held and owned only by those actively engaged in its management, either as officers or directors, or holding positions of trust and responsibility under said officers, or by parties entirely acceptable to the holders of the majority of said stock." The parties then agree " to accept and do hereby purchase the said shares of common stock set opposite their respective names, upon the following terms and conditions." These terms and conditions are : (*a*) If a holder of stock ceases to be a desirable associate or voluntarily resigns his position, the holders of a majority of the stock may appraise and purchase his stock which " shall be divided or distributed among the holders of said common stock in proportion to the amounts of stock held by each ; " (*b*) if the holder of any stock desires to sell it, he must first offer it to the holders of the balance of the stock at a cash price to be determined by the holders of a majority of the stock, at which price they may buy it, " and distribute same among said holders in proportion to the amount of their respective holdings," and if they refuse to purchase it at the price, the owner may sell it in open market ; (*c*) the common stock " shall be under the control of and subject to the vote or decision of the majority of said stock."

Russell H. Boggs and Henry Buhl, Jr., each proposed to sell 750 shares of his common stock to five of the other holders of the stock, not including Boswell, the plaintiff. The latter then filed this bill to restrain both Boggs and Buhl from selling and transferring, and the other defendants from purchasing, the stock, " other than in the manner and upon the terms provided for in the agreement." The plaintiff avers in his bill that by the terms of the agreement " the common stock which they (Boggs and Buhl) proposed to transfer should first be offered to all of the holders of the balance of the common stock, except the said Russell H. Boggs and Henry Buhl, Jr., at a cash price to be determined upon by the holders of a majority of said common stock." Under his construction of the contract, the plaintiff claims to be entitled to 924 of the 1,500 shares of stock proposed to be transferred by Boggs and Buhl. On the other hand, the defendants contend that under a proper interpretation of the contract, Boggs and Buhl may sell the stock to any of the present holders of common stock

without being required to first offer it to all of them, and that they were only required to offer the stock to all the balance of the holders of stock before they could sell to an outsider. The court sustained the position of the defendants and dismissed the bill.

We have no doubt that the purpose of R. H. Boggs and Henry Buhl, Jr., in proposing to sell a part of their holdings to the smaller shareholders of the common stock was, as suggested by them, to insure the success of the corporation and to increase the value and earning power of all of the common stock. Acquiring and holding the additional stock would unquestionably be a strong incentive to the smaller shareholders to increase their efforts in behalf of the corporation and would, no doubt, secure from them greater activity in advancing the common interests of all the holders of the stock. But the purpose thus sought to be accomplished by Mr. Boggs and Mr. Buhl was precisely the purpose which all the parties had in view when they signed the contract of 1899 under which they hold the common stock. They all then thought that the enforcement of the terms and conditions set forth in that instrument would result to the mutual benefit and advantage of all the holders of the common stock. Whatever views, however, may have been, or may now be, entertained as to the best methods of securing the success of the corporation, all the parties who signed the agreement must comply with its terms. It is the law of the case and as such must be enforced and observed.

We do not agree with the learned trial judge in his construction of the contract under which the parties purchased and now hold the common stock of the corporation. One of the manifest and conceded purposes of the parties as disclosed by the agreement was that the stock should be held by those who were managing and controlling the business of the corporation. We think it equally clear that it was the intention of the parties that in the sale and transfer of any of the common stock, regardless of the reasons therefor, the owners of the remaining shares should have an opportunity to increase their holdings in proportion to their original purchases. This is evident from the terms of the contract. The incompetency or personal conduct of a shareholder may, at the option of the holders of a

majority of the stock, compel him to sell his stock.   A like provision is made in the contract when a holder of any common stock resigns his position.   The purchasers in each instance are the holders of a majority of the stock.   But while they are the purchasers, they are required to distribute the stock " among the holders of said common stock in proportion to the amount of stock held by each."   This provision preserves among the shareholders the ratio or proportion of the holdings which existed at the original purchase of the stock.   The next provision of the instrument requires the holder of any shares of stock who desires to sell to first offer them to the holders of the balance of the stock at a price to be determined by the holders of a majority of the stock.   The holders of the common stock may purchase at this price but, as in the instances above noted, they are required to " distribute the same among said holders in proportion to the amount of their respective holdings."   In each and every instance, therefore, whenever, for any cause, stock is sold and transferred, it is required to be distributed among the remaining shareholders " in proportion to the amount of their respective holdings."   This results in maintaining the relative positions of the shareholders to each other as they were when the stock was originally purchased and the agreement was entered into by all the holders of the common stock.

If, however, the holders of the common stock refuse to purchase any stock offered them by any of their number, then the contract provides that the owner may sell it in the open market.   It is only in case of such refusal, that he can sell it to an outsider and thereby prevent its being purchased and distributed proportionately among the holders of the balance of the stock.   In every other instance, as we have seen, the agreement is explicit that the ratio of the original holdings shall be maintained.

It is essential to the protection of the interests of the original shareholders that the ratio of their holdings of common stock shall be preserved.   The agreement provides that all the common stock " shall be under the control of and subject to the vote or decision of the majority of said stock, and any action taken by or decision arrived at by said majority shall be conclusive and binding and without exception or appeal

upon all the holders of said common stock." And further, it is the holders of a majority of the common stock who fix the price to be paid a retiring shareholder for his stock, who determine who is an undesirable associate, and who purchase the stock of such associate and of any stockholder who voluntarily resigns his position. Hence it is obvious that it is of the utmost importance to a shareholder that he shall maintain his relative voting strength by the acquisition of his proportionate share of the stock sold by other holders. The extent of his power in the control and management of the business of the corporation as well as in the distribution of its common stock and hence the protection of his interests depend upon the right to demand and receive his proportionate share of the stock sold by any of the other shareholders. As the common stock is now held by the several owners, R. H. Boggs and the plaintiff or Henry Buhl, Jr., and the plaintiff have a majority of it, and hence can control the policy and management of the corporation. If, however, the proposed sale is consummated, Boggs or Buhl and the five vendees of their stock, now the holders of a very small proportion of the stock, would have the majority holdings, thereby increasing the latter's voting power in the corporation beyond that of the plaintiff, and giving them with either Boggs or Buhl the control of the corporation.

It being the manifest intention of the parties, as disclosed by their contract, that the relative holdings of the original owners of the common stock should be maintained and that, therefore, each holder of stock should have an opportunity to increase his holdings by the purchase of his proportionate share of the stock sold by other holders, it is clear that Boggs and Buhl could not select certain individuals among the other shareholders and sell the 1,500 shares of stock to them and thereby deprive the remaining shareholders of their proportionate share of the stock. We are therefore of opinion that, in the language of the contract, "if any holder of any shares of said common stock desires to sell the same, or any part thereof, said shares must first be offered to the holders of the balance of said common stock," and that this provision of the agreement applies to all sales of stock whether the proposed purchaser be a stockholder or an outsider.

But the plaintiff's contention that he is entitled to 924 shares

of the 1,500 shares of the common stock proposed to be sold cannot be sustained under our interpretation of the contract. As averred in the bill, each of the two stockholders (Boggs and Buhl) proposes to sell 750 shares of his stock. They do not offer to sell 1,500 shares of the stock held by them jointly, but each proposes to sell a certain number of shares owned by him individually. They would therefore each have the right to demand his proportionate share of the 750 shares of the stock sold by the other. The contract explicitly provides that "any holder of stock who desires to sell" must first offer his stock "to the holders of the balance of said common stock," and of course that includes all the holders of common stock except the one who then proposes to sell. When the purchase has been consummated, the agreement further requires that the stock shall be distributed "among said holders in proportion to the amount of their respective holdings." It is therefore manifest that Boggs and Buhl are each entitled to his share of the stock which the other proposes to sell.

The decree is reversed, and it is now ordered, adjudged and decreed that an injunction be issued by the court below as prayed for in the plaintiff's bill.