# Boyer, Appellant, v. Nesbitt.

*Corporations—Stock—Voting trust—Powers—Trusts and trustees—Options—Proxies.*

1. An agreement made between a majority of the stockholders of a corporation and its three directors, whereby the stockholders transfer the legal title and voting rights of their stock to the directors as trustees, for the term of five years, the design being to secure a continuation of the business policy of the corporation inaugurated by the officers then in control of its affairs, is not invalid as against public policy, nor does such an agreement offend in terms or by necessary implication against any positive legislative enactment or any declared statutory policy of this state.

2. The general policy of the law prohibits the separation of the voting power from the beneficial interest in the stock of a corporation and to justify such a separation by a voting trust agreement there must be a proper interest to conserve, some definite policy in the interest of the corporation to be carried out, some beneficial interest of the stockholders to be served or some purpose not unlawful of an advantageous character to the stockholders to be effectuated.

3. A provision in such agreement giving the trustees the first right to purchase the stock of any contracting party who should not desire to continue the trust relation at the expiration of the period named, for double the par value of the same for the use and benefit of the remaining parties renders the power bestowed a power coupled with an interest and therefore irrevocable in accordance with the agreement, and this is especially so where the trustees, during the period in which the right to purchase runs, have active and important duties to perform in the interest of all the contracting parties.

4. Irrevocable trusts, if not coupled with an interest, are regarded as in the nature of a revocable power, but if coupled with an interest, such agreements are generally sustained, and this interest may be either an interest in the subject upon which the power is to be exercised, or an interest in that which is produced by the exercise of the power.

5. An option is not invalid because contingent for, in a sense, all options are contingent, since they may or may not be exercised within the time or upon the conditions stipulated.

6. An option is a unilateral agreement binding upon the party who executes it from the date of its execution and becomes a contract inter partes when exercised according to its terms.

7. In the above case no question as to the right to vote by proxy arose nor as to the sixty-day limitation provided by the Act of March 5,

1903, P. L. 14, as the parties in whose names the stock stood on the books of the company voted the same and no proxy was required or used.

Argued Jan. 3, 1910.   Appeal, No. 205, Jan. T., 1909, by plaintiff, from decree of C. P. Luzerne Co., Dec. T., 1908, No. 2, dismissing bill in equity in case of Joseph Boyer v. A. G. Nesbitt, J. C. Wiegand, A. L. Williams, W. J. Richards, George T. Coddington, Benjamin Dorrance, Charles Gardner, Minnie S. Galland, Lea Hunt, Henry Kunkle, O. W. Lance, E. W. Marple, S. R. Miner, John Mainwaring, C. R. McAlamey, Abram Nesbitt, F. J. Stegmaier, Charles Stegmaier, Stegmaier Brewing Co., Ambrose West, Harry B. Schooley, and the Adder Machine Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to revoke a voting trust of corporate stock. Before HALSEY, J.

The voting trust was to continue for a period of five years with a provision for further continuance at the desire of a majority.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*Frank P. Prichard*, with him *E. F. Heller*, for appellant.— The agreement in the present case is clearly invalid or at all events revocable and the clause in the agreement giving the option of purchase unless the agreement is renewed does not make the trust valid or the delegation of voting power irrevocable: Shelmerdine v. Welsh, 8 Pa. C. C. Rep. 330; Rigg v. Railway Co., 191 Pa. 298; Vanderbilt v. Bennett, 6 Pa. C. C. Rep. 193; Morgan v. Hartley, 30 Pa. C. C. Rep. 22; Shepaug Voting Trust Cases, 60 Conn. 553 (24 Atl. Repr. 32); Railway Co. v. State, 49 Ohio, 668 (32 N. E. Repr. 933); Kriessl v. Distilling Co., 61 N. J. Eq. 5 (47 Atl. Repr. 471); Warren v. Pim, 66 N. J. Eq. 353 (59 Atl. Repr. 773); Harvey v. Imp. Co., 118 N. C. 693 (24 S. E. Repr. 489); Moses v. Scott, 84 Ala. 608 (4 So. Repr. 742).

*William S. McLean,* with him *F. W. Wheaton* and *A. L. Williams,* for appellees.—The agreement contains a power coupled with a beneficial interest and is therefore irrevocable: Hunt v. Rousmanier, 21 W. & S. 174; Smyth v. Craig, 3 W. & S. 14; Blackstone v. Buttermore, 53 Pa. 266; Wood v. Kerkeslager, 225 Pa. 296; Garrett v. Phila. Lawn Mower Co., 39 Pa. Superior Ct. 78.

The interest coupled with the power is a property interest: Fitzsimmons v. Lindsay, 205 Pa. 79.

The option is not invalid because contingent: Corson v. Mulvany, 49 Pa. 88.

The agreement creates a valid, active and irrevocable trust: Eshbach's Est., 197 Pa. 153; Briggs v. Davis, 81 Pa. 470.

OPINION BY MR. JUSTICE ELKIN, March 14, 1910:

It is apparent from this record that many citizens of the city of Wilkes-Barre desirous of building up a local enterprise procured the incorporation of the Adder Machine Company and became subscribers to its capital stock. It is in the nature of a private trading corporation and questions of public policy relating to public and quasi-public corporations do not arise. After the business of the corporation had been successfully started under competent and satisfactory management, a large number of the shareholders representing a majority of the stock, concluded that the mutual interests of the stockholders as well as the interest of the corporation itself would be best served by a continuation of the business policy of the company inaugurated by the officers then in control of its affairs. To effectuate this purpose an agreement in writing was entered into between all of the stockholders who chose to become parties to it and the three stockholders who at the time of its execution had formulated the policy of the company and were directing its business affairs. This agreement named the three persons then constituting the board of directors and in charge of the business management of the company as trustees. It defined the rights of the shareholders on one side and the powers and duties of the trustees on the other. The duty of management was imposed upon the trus-

tees who accepted the responsibilities and have continued to perform the duties of their trust. Under the agreement each of the contracting shareholders transferred his stock to what is called voting trustees who surrendered the same to the corporation and received new certificates in the individual names of the trustees in lieu thereof. The trustees then issued trust certificates to the shareholders who had thus contracted defining the rights and interests of the contracting parties. The trustees therefore hold the legal title to the stock, have imposed upon them the duties of management and are clothed with power to continue through their stock control a business policy helpful to the corporation and beneficial to the shareholders. The important question raised by this appeal is whether this agreement is invalid because against sound public policy. It may be conceded that the question is not free from difficulty and in our own state there is no decided case squarely ruling it. In other jurisdictions courts have differed as to the rule properly applicable to such a state of facts and creditable authority may be cited in support of either side of the present controversy. Courts as a rule have predicated their decisions upon the character of the trust agreement and the statutory requirements as to the control and management of corporations in the particular state where the question arose. In Shepaug Voting Trust Cases, 60 Conn. 553, and Warren v. Pim, 66 N. J. Eq. 353, the leading cases cited by counsel for appellant, the courts treat the question of public policy indicated by the statutes of the respective states as the basis of their reasoning and the foundation upon which their conclusions rest. This seems to be the sounder rule because the public policy which should prevail in the management and control of corporations is primarily a legislative rather than a judicial question. In this connection it is very ably argued that the agreement in question is in contravention of our Pennsylvania statutes. If this were true in fact it would necessarily follow that the agreement must fall because void as against a declared statutory policy of the state, but no such statute has been called to our attention, nor does the agreement offend in terms or by necessary implica-

tion against any positive legislative enactment. It is argued that the corporation acts of 1874 and 1891 provide for annual elections by the stockholders and so they do, but annual elections are held by the appellee corporation and directors are annually chosen by the stockholders. The agreement in question in no way disregards the duty to hold annual elections but on the other hand contemplates the holding of such elections. It is further contended that the act of 1903 confirming the right to vote by proxy and providing that proxies dated more than two months prior to a meeting or an election shall not confer the right to vote, is in effect contravened by the agreement relied on by the appellees in the present case. In answer it may be said that no question of the right to vote by proxy arises in this case. It seems perfectly clear that the proviso referred to has reference to formal proxies given by a stockholder authorizing the person designated therein to vote his stock at a meeting or at an election. No proxy of any kind was given in the case at bar and therefore the sixty-day limitation has no application. In the present case the persons in whose names the stock stands on the books of the company vote the same as they have the prima facie right to do under the express provisions of our statutes. The act of 1893 recognizes the right of a trustee to vote stock so held by him at elections of the company, and provides that if the character of his trusteeship be not disclosed on the face of the certificate, how the question of his right to vote shall be determined. This act clearly contemplates not only the right of a trustee to hold stock, but the power to vote it, and this is what was done in the present case.

But it is argued with great force by the learned counsel for appellant that even if the agreement in question is not invalid as against public policy it is at all events revocable. We concede the weight of authority to be that the general policy of the law prohibits the separation of the voting power from the beneficial interest, and to justify such a separation, there must be a property interest to conserve, some definite policy in the interest of the corporation to be carried out, some beneficial interest of the stockholders to be served or

some purpose not unlawful of an advantageous character to the stockholders to be effectuated. As we read this record and view the facts found by the learned court below there was a property interest to conserve, a definite policy of the corporation in the interest of the stockholders to be carried out and a lawful purpose beneficial to all concerned to be effectuated. This was the very purpose of the agreement and the results seem to be a confirmation of the wisdom of the plan adopted. All of the cases turn upon the question whether the irrevocable trust is or is not coupled with an interest. If coupled with an interest such agreements have been generally sustained but if not coupled with an interest they are regarded as in the nature of a revocable power. We think this is the turning point of the present case and after consideration have concluded the learned court below properly held that the power being coupled with an interest the agreement is valid and binding upon the parties who entered into it. The beneficial interest is set forth in the eighth paragraph of the agreement which gives the trustees the first right to purchase the stock of any contracting party who does not desire to continue the trust relation at double the par value of the same for the use and benefit of the remaining parties. We think this comes within the definition of a power coupled with an interest which has been held to be an interest in the subject upon which the power is to be exercised, or an interest in that which is produced by the exercise of the power. It cannot be doubted under the rule of all our cases that if the parties to the present agreement had entered into a similar contractual relation as partners for the purpose of accomplishing the same results and with the view of continuing a business policy the contracting parties would be bound by their covenants and the contract would be enforced according to its terms. There does not seem to be any sufficient reason for the application of a different rule because instead of binding themselves together as partners the parties chose to adopt the more modern method of incorporation for the transaction of their business in an enterprise in the nature of a private trading corporation. This view of the law was tersely expressed by Chief Justice

MITCHELL in Fitzsimmons v. Lindsay, 205 Pa. 79, where in discussing the question of restraint of alienation arising under a somewhat similar agreement it was said, "Such agreements are quite common among partners as to their shares. in the firm assets and are enforced by courts without hesitation. No reason of overruling public policy is apparent why they should not also be sustained in relation to shares of stock in what is really only a private trading corporation." Agreements between the stockholders of a private trading corporation relating to the alienation, purchase and sale of the shares of stock of contracting shareholders have been sustained by this court in two recent cases: Boswell v. Buhl, 213 Pa. 450; Boggs v. Boggs & Buhl, 217 Pa. 10. Our cases hold that a beneficial interest coupled with a power is a property interest and as such is irrevocable: Smyth v. Craig, 3 W. & S. 14; Blackstone v. Buttermore, 53 Pa. 266; Fitzsimmons v. Lindsay, 205 Pa. 79; Wood v. Kerkeslager, 225 Pa. 296; Garrett v. Lawn Mower Company, 39 Pa. Superior Ct. 78.

In addition it may be said that under the present agreement there is something more to be considered than the mere abstract legal question of power to vote stock coupled with a beneficial interest. The agreement contains all the essential elements of an active trust and the trustees have not only been charged with active duties but they have performed and are performing these duties in the interest of the corporation and for the benefit of the stockholders. They give their services without compensation in the interest of all concerned and it seems to be conceded that the management is competent and the business policy intended to be continued under the agreement highly satisfactory. No question of fraud, mistake or misapprehension has been raised nor has even a suggestion been made reflecting upon the management. No stockholder is complaining about the management and no question has been raised respecting the rights of minority stockholders. The appellant purchased his stock with full knowledge of the agreement and took it impressed with the trust. He is not a purchaser without notice and if the agree-

ment is valid he is bound by its terms. We do not agree with the contention of appellant that the option to purchase is not such a substantial interest as will support the trust, especially in view of the fact that the trustees during the period in which the right to purchase runs have active and important duties to perform in the interest of all the contracting parties. Nor is the argument sound that the option is invalid because contingent. In a sense all options are contingent because they may or may not be exercised within the time or upon the conditions stipulated. An option is a unilateral agreement binding upon the party who executes it from the date of its execution and becomes a contract inter partes when exercised according to its terms. Optional agreements have been before this court for construction in several recent cases and the right of parties to make them and the power of courts to enforce them if exercised according to their terms have always been sustained: Barnes v. Rea, 219 Pa. 279; McHenry v. Mitchell, 219 Pa. 297. There is no substantial merit in the contention that the contract lacks mutuality of parties and is without consideration.

Decree affirmed at the cost of appellant.