## Murphy v. Baker.

*Corporations—Voting trusts—Title of trustee—Transfer to trustee for specific purpose by holder of voting trust certificate.*

1. The execution of a voting trust agreement and the deposit with the trustee thereunder of certificates of stock by stockholders does not confer upon the trustee any equitable title or beneficial interest; he holds only the bare legal title with power to vote the stock and such other powers as may be specifically conferred by the agreement.

2. An assignment of the certificate to the trustee by the holder of a voting trust certificate, together with the execution of the stock power, gives the trustee the mere power to sell and transfer the holder's stock; he has no beneficial interest therein.

3. Where, under the terms of a voting trust agreement, a certificate-holder is not allowed to sell his stock without first offering it to the other parties to the agreement, an assignment to the trustee by a certificate-holder of his certificate confers no beneficial interest; under such an agreement it is essential to the validity of the title of the trustee to establish that the stock was offered to the other certificate-holders before it was sold to him.

Bill and answer. C. P. No. 1, Phila. Co., March T., 1925, No. 2160, in Equity.

*Ira J. Williams* and *Francis Shunk Brown,* for plaintiff.

*Theodore S. Paul* and *George Wharton Pepper,* for defendant.

BARTLETT, P. J., June 26, 1925.—The bill in this case prays that defendant forthwith return and deliver to plaintiff a certain stock power dated May 23, 1923; that defendant be restrained from making any use thereof; that an injunction issue restraining defendant from delivering a certain voting trust certificate for 632 shares of the capital stock of the Philadelphia National League Ball Club to any other than plaintiff; that defendant be required to return and deliver up said voting trust certificate to plaintiff, and that defendant further be required to file with the Philadelphia National League Club a dividend order directing said company to pay all future dividends on said 632 sharees of stock directly to plaintiff.

The answer denies plaintiff's right to these requests, alleging an ownership in said certificate of stock, both as to legal and equitable title, subject only, in case of sale of said stock, to account to plaintiff for the proceeds thereof.

Findings of fact and conclusions of law were filed by both plaintiff and defendant, and are filed herewith and considered by the court as suggestions under the new equity rules.

From the bill, answer and testimony the court finds the following

### Facts.

1. The plaintiff was, on Sept. 20, 1920, the owner of 632 shares of stock of the Philadelphia National League Club, a Pennsylvania corporation.

2. On Oct. 15, 1920, and Sept. 16, 1921, plaintiff, defendant, Lewis C. Ruth and Robert Coane entered into a voting trust agreement, and defendant Baker was appointed voting trustee. The shares of said parties were deposited thereunder, and each received a voting trust certificate therefor, plaintiff receiving one for 632 shares.

3. The defendant is the president of said ball club and is at present receiving $25,000 per annum salary.

4. On May 23, 1923, plaintiff executed an assignment of his voting trust certificate No. 1 for 632 shares of the capital stock of said club to defendant (see Exhibit B of bill), and at the same time executed and delivered to

Murphy *v.* Baker.

defendant a stock power appointing defendant his true and lawful attorney to sell for plaintiff his stock (see Exhibit B of bill).

5. Said assignments from plaintiff to defendant are without consideration, but made solely for the purpose of permitting defendant Baker to control Murphy's stock, so far as the sale thereof was concerned; the understanding being that defendant was to sell plaintiff's stock with his own.

6. As evidence of the agreement entered into between plaintiff and defendant regarding the transfers and assignments of the stock trust certificate and power of attorney and confirming plaintiff's position and testimony, defendant wrote a letter on May 23, 1923, to plaintiff, setting forth the manner and condition of his holding said stock (see Exhibit C of bill).

7. Nothing was said at the time of transfer of said stock about dividends. On Jan. 2, 1925, the club declared a 4 per cent. dividend, and plaintiff received his dividend on five shares of stock not included in the voting trust agreement.

8. On Jan. 29, 1925, plaintiff demanded from defendant payment of the dividend on his 632 shares of stock, which was refused. Subsequently, defendant sent his personal check for the amount of said dividend, accompanied by letter dated Feb. 5, 1925 (see Exhibit D, amended bill), asserting in said letter he did so, "appreciating the fact of your transferring your stock to me, I would like you to have this dividend."'

9. Plaintiff answered said letter of Feb. 5, 1925, by letter of Feb. 19, 1925, repudiating the fact of transferring his ownership in said stock to defendant, but reasserting the fact of his having executed a power of attorney authorizing defendant to sell plaintiff's stock at the same price defendant should get for his, and for no other purpose.

Plaintiff has rescinded said power of attorney and demanded the return of the stock and trust certificate. Defendant has refused to comply therewith.

10. Defendant has made no effort to sell either his own or plaintiff's 632 shares of stock since delivery to him of the stock power dated May 23, 1923, and claims the right to withhold the sale of plaintiff's 632 shares of stock indefinitely, or to sell same whenever he pleases, at whatsoever price he may desire.

11. Defendant, as said voting trustee, kept no separate bank account of dividends received by him on any of the shares of stock in said voting trust, but intermingled said funds in his own private account.

12. There is not sufficient evidence to establish an absolute gift of said stock by plaintiff to defendant as the latter would have it understood, but the assignments themselves, and the testimony and writings, clearly indicate that defendant was to act as plaintiff's agent in the sale of said stock, and for that purpose, and that alone, the *indicia* of ownership were placed in defendant's hands.

13. There was no contract such as avowed by defendant, or any contract entitling defendant to continue in possession or control of plaintiff's stock or voting trust certificate, and the plaintiff has a right under the evidence to revoke said power of attorney and recall said assignment.

### Discussion.

The plaintiff is one of the stockholders of the Philadelphia National League Ball Club and was a friend of the defendant in this case, and in every way endeavored to assist him in making a successful administration of the club's affairs.

In 1920, in order to accomplish this, defendant, plaintiff and some other stockholders pooled their stock under a voting trust agreement, and again,

in 1921, for a period of five years; plaintiff depositing 632 shares of stock and received therefor, under said agreement, a certificate No. 1 for said shares.

During the fall of 1923 or winter of 1923, one of the members of the voting trust sought to purchase the holdings of plaintiff, which he declined, and upon his return to Philadelphia in May of 1923, plaintiff advised defendant of this fact and asked defendant what his purposes were in regard to the club, who replied, he hoped to get the club in the first division, where he would sell.

Plaintiff then stated he was in favor of defendant's plan, and in order to carry this out would put defendant in position, so far as his stock was concerned, to control the sale of it, together with defendant's. He stated: "I will join with you and you can have my stock to sell with your stock. I will arrange to give you a power of attorney for my stock."

On May 23, 1923, plaintiff executed a power of attorney, irrevocable in nature, to defendant to sell his stock and assigned to defendant the stock trust certificate for 632 shares of stock; defendant, in turn, executing and delivering to plaintiff a letter, in which he stated the terms upon which he held the stock (see Exhibits B and C of bill). Nothing was said at the time about dividends—should any be declared.

Subsequently, in January, 1925, dividends of 4 per cent. on the year 1924 were declared and plaintiff received $20 on five shares of stock which he held, not included in the trust agreement. Upon inquiry made as to the other shares of stock, defendant set up and asserted absolute ownership in said stock by reason of said assignments, but subsequently sent plaintiff the dividends by letter dated Feb. 5, 1925, as follows:

"Enclosed please find check for Twenty-five Hundred and Twenty-eight ($2528.00) Dollars. The Ball Club declared a 4% dividend on its earnings of last year, and appreciating the fact of your transferring your stock to me, I thought I would like you to have the dividend."

To which letter plaintiff replied, repudiating any transfer to defendant of ownership in his 632 shares of stock other than for the purpose of sale.

Under the evidence in this case, we cannot agree with defendant's contention that he has the ownership of said stock and can sell it as and when he pleases and account only to plaintiff for the proceeds thereof.

Defendant was a trustee for plaintiff under the voting agreement, and under the power of attorney executed by plaintiff to defendant became his agent to sell the stock.

There is no evidence of a gift of said stock to defendant; on the contrary, the testimony of plaintiff and his witness, and the writings submitted, all show that this was an arrangement whereby defendant was to have control of plaintiff's stock for sale, together with defendant's own stock and at the same price.

There was no consideration passing from defendant to plaintiff, and, therefore, the plaintiff had the right, unless a sale was made by defendant of their joint stock within a reasonable time, to cancel the power and demand the return of his stock trust certificate. From the evidence and defendant's own letter of May 23, 1923, to plaintiff, defendant was to effect a joint sale of their stock holdings, and no interest in the res itself vested in the defendant.

The execution of the voting trust agreements gave defendant, as voting trustee, only one of the indicia of ownership of plaintiff's 632 shares; i. e., the voting power. The equitable title and beneficial interest remained in plaintiff, the bare legal title passing to defendant. See Boyer v. Nesbitt, 227 Pa. 398.

Murphy v. Baker.

The assignment of the voting trust certificate and the execution of the stock power gave defendant the power to sell and transfer plaintiff's stock; nothing else.

Under the terms of the voting trust agreement, the parties could not sell their stock without offering it to the others, parties to the agreement. Therefore, defendant's contention of a sale to him likewise fails, as there was no evidence to establish its offer to the other members, and if such was a sale, which we do not find, it would have been in contravention of the trust agreement, and a court would not hear of an illegal act interposed as a defence.

We are of opinion, from all the evidence in this case, that defendant was only a voting trustee of plaintiff's stock and an agent to sell, which agency could be terminated by plaintiff, even though the power of attorney executed stated it was irrevocable, as defendant did not, within a reasonable time, sell or offer to sell their joint stock.

We are, therefore, of opinion that the prayers of plaintiff's bill should be sustained.

### Conclusions of law.

1. Plaintiff has the right to rescind the power and demand the return of his stock.

2. Defendant had more than a reasonable time in which to sell plaintiff's stock.

3. Defendant has no interest in plaintiff's stock, either by gift or contract of sale.

4. The stock power given by plaintiff to defendant is not coupled with an interest and is revocable at will.

5. Plaintiff is entitled to an injunction restraining the defendant, William F. Baker, his heirs, executors, administrators, successors and assigns, from making any use of said stock power and plaintiff is entitled to its delivery and retransfer to him.

6. Plaintiff is entitled to an injunction restraining the said William F. Baker, his heirs, executors, administrators, successors and assigns, from delivering said voting trust certificate No. 1 for 632 shares of the capital stock of the Philadelphia National League Club to any one except plaintiff, and plaintiff is likewise entitled to its return to him, and defendant is ordered to make such return.

7. The defendant should file with the Philadelphia National League Club a dividend order, directing said company to pay all future dividends on said 632 shares of stock directly to plaintiff.

Counsel will prepare a decree in accordance with the above findings and conclusions.

The prothonotary will notify the parties hereto of the foregoing findings of fact and conclusions of law, so that exceptions hereto may be filed within ten days if so desired.

NOTE.—The relevant clauses of the voting trust agreement were as follows:

First. Each of the parties hereto of the first part severally agrees to deposit the shares of the capital stock of the aforesaid club to the number set opposite his name as hereunto subscribed respectively, with sufficient transfers thereof in favor of the Voting Trustee, who will issue in exchange therefor voting trust certificates. All shares represented by the stock certificates so deposited shall be transferred upon the books of said club in the name of the Voting Trustee, and during the period of this agreement the Voting Trustee shall be entitled to vote the said stock. Upon the termination of this agreement stock certificates shall be delivered to the holders of the Voting Trust certificates upon the surrender thereof to the Voting Trustee.

Murphy v. Baker.

Fifth. This agreement shall remain in force for a period of five years from the date thereof and shall continue in force after the expiration of such period until terminated by written notice of one or more of the parties hereto.

Sixth. The parties hereto each agrees with the other that none of them shall sell or dispose of his stock in said club (whether represented by Voting Trust certificates or otherwise) to any other persons than the parties hereto, unless the same is offered to the other parties hereto and they refuse to purchase the same at a price equal to that which can be obtained from some third person.

Exhibit B was an irrevocable stock power in the following language:
Know All Men by These Presents:

That I, the undersigned, Thomas E. Murphy, for value received, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer unto William F. Baker, Six hundred and thirty-two shares of the Capital Stock of the Philadelphia National League Club, a Pennsylvania Corporation.

And I Do Hereby Constitute and Appoint him my true and lawful attorney, Irrevocable, for me and in my name and stead but to his use, to sell, assign, transfer and set over, all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that my said attorney or substitute or substitutes shall lawfully do by virtue hereof.

In Witness Whereof, I have hereunto set my hand and seal at Philadelphia, Pennsylvania, the 23rd day of May, 1923.

(Signed)        THOMAS E. MURPHY.

The letter referred to in the opinion as Exhibit C was as follows:

Philadelphia, Penna., May 23, 1923.

Colonel Thomas E. Murphy,
    North American Building,
    Philadelphia, Penna.
Dear Mr. Murphy:

This will acknowledge receipt from you of voting trust certificate No. 1 (one) for 632 shares of the capital stock of the Philadelphia National League Club which you have this day assigned and delivered to me. I also wish to acknowledge receipt of a separate assignment of the said 632 shares of stock which you have also executed and delivered to me this day.

In connection with the transfer and delivery to me of this stock, I want to assure you that I shall at no time sell any of my other stock in the Philadelphia National League Club unless the 632 shares above mentioned are included in the sale, and that if and when I do sell the 632 shares of stock, together with the other shares of stock in the club which I own, I will pay over to you, or to your estate if you are then deceased, such proportion of the purchase price which I shall receive for said stock as the 632 shares above mentioned bears to the total of stock which I shall own at the time of the sale.

I also want to assure you that I bind not only myself, but my executors and administrators to carry out the terms of this letter.

(Signed)        WILLIAM F. BAKER.