## Clemmer et al. v. Morgan et al.

*S. Gordon*, for plaintiff.
*J. J. Sullivan*, for defendant voting trustees.
*A. H. White*, for Philadelphia Transportation Company.

SLOANE, J., April 13, 1951.—Plaintiffs hold a number of shares of participating preferred stock and a certain number of shares of common stock of one of the defendants, Philadelphia Transportation Company. The other defendants are voting trustees.

All parties seek a declaratory judgment, under our Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, et seq., as last amended by the Act of May 26, 1943, P. L. 645, 12 PS §831 et seq., in order "to settle and to afford relief from uncertainty and insecurity with respect" to the parties' legal relations.

We know we must be satisfied the parties have a right to be here before we may allow them to go ahead, and "that jurisdiction cannot be conferred by the mere agreement of parties": Phila. Mfrs. Mut. Fire Ins. Co. v. Rose, 364 Pa. 15, 18. See also American Casualty Company of Reading v. Kligerman et al., 365 Pa. 168; Stofflet & Tillotson v. Chester Housing Authority, 346 Pa. 574; Valley Railroad Co. v. Delaware Lackawana & Western R. Co., 346 Pa. 579. We are satisfied.

The facts are plain and without controversy. PTC (we shall so call Philadelphia Transportation Company, one of the defendants), was reorganized in 1939. In 1940 most of the common-stock shareholders and participating preferred-stock shareholders entered into separate printed voting-trust agreements, transferring their respective voting rights under their respective shares to trustees—five trustees representing the preferred shareholders, four, the common shareholders. Each agreement was to last "for the term of five years from the date hereof", January 2, 1940 to January 2, 1945. By supplemental printed agreements, subsequent and separate, the term of each agreement was extended another five years, each to expire January 2, 1950. Each shareholder got a "voting-trust

certificate" for his shares of participating preferred and shares of common stock.

In November 1949 the voting trustees, by notice, told the voting trust certificate holders of both classes of shares to exchange their voting-trust certificates into share certificates. This was done by most holders. The holders of some of the certificates have not yet done it; these holders of unexchanged certificates represent more than 41,000 shares of participating preferred stock and more than 44,000 shares of common stock. And it is because of this failure or omission by shareholders to make the exchange that the question before us comes about. For the trustees are still voting, and claim they have the right and duty to continue to vote these unexchanged shares though the voting-trust agreements expired more than a year ago. Plaintiffs, as shareholders, deny that the trustees can vote these shares. A declaratory judgment will end the controversy.

The question which comes to us is whether the voting-trust agreements continue as to the outstanding unexchanged shares though the time limitation of the agreements has run out. The voting trustees say they have a right to vote the unexchanged certificates until their holders actually exchange them for shares. This contention is based on language in the voting-trust agreement and in the voting-trust certificate itself: *"until after the actual delivery of such certificates* the Voting Trustees shall possess and be entitled to exercise all rights of every kind and nature, *including the right to vote* in respect of any and all such stock, it being expressly stipulated that no voting right passes by or under this Voting Trust Certificate, or by or under any agreement, express or implied." (Italics supplied.)

We think the answer is clear. The voting-trust agreements call for an expiration date on January

2, 1950. The agreements "shall be continued in full force and effect until January 2, 1950". Words of so plain a meaning ought not to be conjured or constrained to some other possible meaning. And we see no inconsistency with the right of the trustees to vote the shares "until after the actual delivery of such certificates". This language was intended to embrace situations where the trustees call for an exchange of certificates before the expiration date of the agreements; and that is what happened here, for on November 8, 1949, the trustees sent out notices to the holders of voting-trust certificates calling upon them to make the exchange on November 23, 1949, more than a month before the expiration date of the agreements.

And too, a voting-trust agreement should have strict observance both because the shareholder has nothing to do with its preparation, and it does take away his right to vote his shares for an extended period. See Boyer v. Nesbitt, 227 Pa. 398, 402-03; Voting Trusts, Their Abuses and Regulation, Ballantine, 21 Texas Law Review 139. If there be any doubt in construction, such doubt should be resolved in favor of restoring that right.

Finally, we shall mention section 511 of the Business Corporation Law of May 5, 1933, P. L. 364, 394, 15 PS §2852-511, which permits written voting trusts "for a period not exceeding ten years". This declares the policy of our Commonwealth with respect to the period of voting trust agreements, and any attempt to create a voting trust for a period longer than 10 years should be declared invalid, certainly as to the period in excess of 10 years. While it is true that the Business Corporation Law "does not relate to, does not affect, and does not apply to" PTC, since that corporation is subject to the supervision of the Pennsylvania Public Utility Commission (15 PS §2852-4), we see no reason why we cannot adopt the avowed policy of our Commonwealth to

the situation before us. The rights of a shareholder in a public utility in this respect should be no different from the rights of a shareholder in an ordinary business corporation.

The voting trustees cannot argue they have duties to perform with respect to these holders of unexchanged certificates. They have no more of a care for these holders than directors have as to shareholders who fail or refuse to come to shareholders' meetings and who fail or refuse to send in their proxies for those meetings. Generally, there is no mandate or duty on directors to vote absentee shareholders; and we suppose it can be said that in big corporations wherein shares and shareholders are many and widely distributed, there are many shareholders who are not represented, either in person or by proxy, at shareholders' meetings. No director or officer can think it his right or duty to vote these absent shares.

A declaratory judgment shall issue in accord to this opinion. Either or all counsel may submit a proper form for entry of judgment.