Homer L. Bailey et al *v.* Clint Jones, Securities Commissioner

5-4163                                              419 S. W. 2d 585

Opinion delivered May 22, 1967

[Rehearing denied November 6, 1967.]

*Spitzberg, Bonner, Mitchell & Hays;* By: *H. Mau-*

*rice Mitchell* and *H. Allan Horne,* for appellants.

*Catlett & Henderson,* for appellee.

OLIVER M. CLEGG, Special Justice. We are called upon here to answer the single legal question: May stockholders of a domestic insurance company legally create a voting trust?

Appellants are some of the principal officers, directors, and stockholders of American Foundation Life Insurance Company, a domestic insurer. Believing that a competitor was buying shares of the Company with the view of merging it into another insurer, Appellants entered into a Voting Trust Agreement in April, 1966, and actively solicited other stockholders to transfer shares to the Trust. The term of the Trust was a period of ten years during which time the Trustees would have the sole right to vote the stock so transferred. In exchange for such stock, the former stockholders were to be issued certificates of ownership in the Trust. All dividends received by the Trustees on account of the shares held by them were to be paid to the owners of the Trust Certificates. The avowed purposes of the voting trust arrangement were to prevent outside control and assure continuity of management.

Appellants then sought to register the Trust Certificates with the Appellee for intrastate sales. Both the Securities Commissioner and the lower court held that under the laws of this state stockholders in a domestic insurance company could not legally establish a voting trust in the stock of such company.

The Voting Trust arrangement has not been unknown in the statutes of this state. The Business Corporation Code of 1931 (Act 255) made provision in Section 17 (formerly § 64-215 Ark. Stats. 1947 Anno.) for voting trusts subject to certain restrictions, the principal one being a term limit of ten years. This provision was, in 1965, incorporated in the present Corporation

Code (Act 567) § 64-221 Ark. Stats. 1947 Anno. Both acts, however, exempted domestic insurance companies from their coverage.

In 1959 the legislature enacted the "Arkansas Insurance Code" (Act 148) which, according to the title, is designed as "A Comprehensive Revision, Consolidation and Classification of the Laws of the State of Arkansas Relating to Insurance Business; to Regulate the Incorporation, Formation, and Corporate Affairs of Domestic Insurance Companies", etc. No express provision was made in the Arkansas Insurance Code for the formation of voting trusts as was made in the Business Corporation Codes of 1931 and 1965.

Since the Legislature did not expressly make provision in the Insurance Code for voting trusts, are they valid under the common law, as Appellants contend, or impliedly prohibited, as Appellee contends?

In reaching the answer to this question, the Courts have considered "various statutes, such as those relating to proxies or the right to vote at stockholders meetings or for the election of directors. . . as indicative of the legislative policy approving or disapproving of voting trusts and other similar agreements". Annotation: Validity of Voting Trust or Other Similar Agreement For Control of Voting Power of Corporate Stock. 98 A. L. R. (2) 376, 384.

Thus, it was said in *Boyer* v. *Nesbitt* (1910) 227 Pa. 398, 76 A. 103, that in the leading cases on voting trusts, "the courts treat the question of public policy indicated by the statutes of the respective states as the basis for their reasoning and the foundation upon which their conclusions rest. This seems to be the sounder rule, because the public policy which should prevail in the management and control of corporations is primarily a legislative rather than a judicial question".

In *Bostwick et al* v. *Chapman et al*, (1891) 60 Conn.

553, 24 A. 32, sometimes referred to as the "Shepaug Voting Trust Cases", the Court looked to the spirit and intent of a statute dealing with stock proxies to determine the public policy relating to voting trusts. In so doing, the Court said:

> "Were this a power of attorney in formal terms, no claim would be made but that it was not only contrary to the policy of the law of this state, but in direct conflict with our statute, which says that 'no person shall vote at any meeting of the stockholders of any bank or railroad company, by virtue of any power of attorney not executed within one year next preceding such meeting; and no such power shall be used at more than one annual meeting of such corporation'. Gen. St. § 1927. This statute tends to disclose what the policy of the law of this state is, touching the matter of the surrender by a stockholder of his voting power to someone else. It would seem that it is opposed to such surrender for an indefinite period, or for a period of five years".

To like effect see: *Simpson* v. *Nielson* (1926) 77 Cal. App. 297, 246 P. 342; *People ex rel. Arkansas Valley Sugar Beet and Irrigated Land Co.* v. *Burke* (1923) 72 Colo. 486, 212 P. 837; 30 A. L. R. 1085.

Turning, therefore, to the recent enactment by the legislature of the Arkansas Insurance Code and amendments thereto, the public policy of this state has been unmistakably and emphatically stated.

Section 472 of the Arkansas Insurance Code, as originally adopted in 1959, provided:

> "(1) Every proxy of a stockholder of an insured, *unless coupled with an interest,* shall be revocable at will, and this provision cannot be waived". § 66-4220 Ark. Stats. 1947 Anno.

Under that provision an argument might have been

made that voting trusts were not in contravention of the legislatively expressed public policy since the interest to which the power is coupled may be that of protecting the proxy holder's own property interest in the corporation. *Smith* v. *San Francisco & N. P. R. Co.*, (1897) 115 Calif. 584, 47 P. 582. 19 Am. Jur. (2) 180, Corporations § 676.

But that question was clearly removed with the amendment in 1965 (the same legislative session at which the Business Corporation Code was enacted) of the original section quoted above. As so amended, the provision now reads:

> "(1) Every proxy of a stockholder of an insurer shall be revocable at will, and this provision cannot be waived".

In deleting the "power coupled with an interest" clause and thereby prohibiting, absolutely, irrevocable proxies by stockholders in domestic insurance companies, even those coupled with an interest, the public policy was made clear and unmistakable. This is particularly true since the Business Corporation Code adopted by the same legislature provided for irrevocable proxies, whether or not coupled with an interest, and, consistently therewith, expressly provided for voting trusts. *Roberts* v. *Tice*, (1939) 198 Ark. 397, 122 S. W. (2) 258; *Cordell* v. *Kent*, (1927) 174 Ark. 503, 295 S. W. 258.

We must presume that the legislative intent and purpose is consistent throughout the same enactment. This is true in the Corporation Code: Unrestricted irrevocable proxies allowed—Voting Trusts expressly allowed. Contrariwise, the policy so clearly and emphatically expressed in the Insurance Code of prohibiting irrevocable proxies must, necessarily, preclude the allowance of the Voting Trust.

The judgment of the Circuit Court is affirmed.

FOGLEMAN, J., disqualified.
BYRD, J., dissents.