In re CG REALTY INVESTMENTS, INC., Debtor.

Francis C. CAMPBELL, Plaintiff,

v.

CG REALTY INVESTMENTS, INC., Defendant.

Bankruptcy No. 87–00835S.
Adv. No. 87–0426S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 3, 1987.

Robert Szwajkos, Philadelphia, Pa., for debtor/defendant.

Gerald J. McConomy, Leonard P. Goldberger, Charlene A. Braida, Philadelphia, Pa., for plaintiff.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant matter was filed as an Adversary proceeding pursuant to Bankruptcy Rule (hereinafter referred to as "B.R.") 7001. The Plaintiff's Complaint seeks the following relief, pleaded in the alternative: (1) That the Defendant Debtor-in-Possession be compelled to assume or reject the subject executory contract for residential property within a 10–day time period pursuant to 11 U.S.C. § 365(d)(2); (2) That the Court issue a Declaration that the Plaintiff is entitled to the rights of a purchaser in possession of the premises pursuant to 11 U.S.C. §§ 365(i)(1) and (2); and (3) That the Court issue a permanent injunction requiring the Defendant to deliver title to the premises to him.

Finding this matter to be resolvable as a matter of contract interpretation, we hold that the Plaintiff is not entitled to the rights of a purchaser in possession and, consequently, we deny the Plaintiff's request for a permanent injunction. We will not rule on the request pursuant to § 365(d)(2) as a result of these holdings, but will allow the Plaintiff to list this aspect of the matter for a hearing upon ten (10) days notice to the Defendant.

## FINDINGS OF FACT

1. The Plaintiff is FRANCIS C. CAMPBELL (hereinafter referred to as "the Plaintiff"), an individual who resides at 202 Foster Road, R.D. # 1, Chester Springs, Charlestown Township, Chester County, Pennsylvania 19355 (herein referred to as "the Premises").

2. The Defendant is CG REALTY INVESTMENTS, INC., a corporation which filed a voluntary case under Chapter 11 of the Bankruptcy Code on February 20, 1987, and which has continued in the possession of its property and operation of its business as Debtor-in-Possession.

3. From 1982 until early 1987, the Plaintiff was employed by the Crouse Group Companies, which are affiliates of the Defendant. His last position was as President of the engineering and construction division of the Crouse Group.

4. In or about April, 1984, the Defendant entered into a lease with the Plaintiff for the rental of the Premises as the Plaintiff's residence.

5. The lease contains language which purports to provide an option for the Plaintiff to purchase the Premises from the Defendant. The pertinent language of the lease provides as follows:

> 13th. At any time in and after March 1, 1984 but during the term hereof, but only upon 30 days' prior notice to lessor, lessee may exercise this option to purchase the premises at the purchase price of $200,514.36 plus any additional costs incurred by lessor that have not been reimbursed by lessee to lessor less a pro-rata share of the monthly rental as agreed to prior to settlement as actually paid by lessee and collected by lessor on and after March 1, 1984. Upon the exercise by lessee of this option to purchase, closing thereunder shall occur on or before the expiration of twenty (20) business days thereafter (excluding the day of lessor's receipt of notice of the exercise). *If closing does not occur, regardless of fault of either of the parties or of third parties, this option shall expire unless the parties shall otherwise agree between each other in writing.* Closing shall be deemed to have occurred only of [if] completed on the day it commences. Notice of the exercise of this option must

be received by lessor via certified mail, return receipt requested, the proof thereof as to receipt and date shall be the receipt (emphasis added).

6. This language of the lease, which purports to be an option, is unambiguous. It does not effectuate the creation of an option contract because it does not bind both parties upon the Plaintiff's exercise of the purported option.

7. The Plaintiff exercised the purported option to purchase the premises by sending the Defendant a certified letter dated February 17, 1987.

8. The Defendant did not respond in any way to this letter and closing therefore did not occur.

9. The Plaintiff resigned from his employment with the Crouse Group Companies at the request of James G. Crouse, the President of the Crouse Group, because the Plaintiff and Mr. Crouse were not in agreement on how to manage the Company and the working relationship between them had become poor.

10. The Plaintiff's belief that he had exercised a valid option which then became a binding contract to purchase the Premises was incorrect.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this Adversary proceeding, pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), which is a civil proceeding related to a case under title 11. It may be a core proceeding, as defined by 28 U.S.C. § 157(b)(2)(A), in that it is a proceeding concerning the administration of the estate and affecting liquidation of assets of the estate. In any event, both parties have agreed that this Court can make a final determination in this matter. *See Holloway v. Heci Exploration Co. Employees Profit Sharing Plan,* 76 B.R. 563, 570–71 (N.D.Tex.1987); *In re Wicaco Machine Co.,* 60 B.R. 415, 417 (E.D.Pa.1986); and *In re A.I.A. Indus., Inc.,* 75 B.R. 1013, 1017 (Bkrtcy.E.D.Pa. 1987).

2. Because the express language of the purported option permitted the Debt-

or to ignore the Plaintiff's exercise of the option and to refuse to proceed to closing unilaterally, a valid option contract never existed.

3. The language of the purported option here did not create an enforceable contract because it did not express an intention to effectuate a binding agreement upon either parties.

4. Given the non-existence of a valid option contract, the Plaintiff has no rights as a purchaser in possession under § 365(i)(1) and (2).

5. The contract is therefore a mere lease, which is an executory contract pursuant to § 365(d)(2). The Plaintiff has a right to require the Defendant to determine whether to assume or reject the lease contract within a reasonable time.

## DISCUSSION

The only testimony presented in this matter was that of the Plaintiff, who clearly believed that, by sending a letter indicating that he desired to exercise the purported option to purchase the Premises on February 17, 1987, he had properly exercised a valid option to purchase the Premises, in which he has resided since December, 1983. Unfortunately for the Plaintiff, a plain reading of the pertinent language of the operative document reveals that no valid option contract was created.

An option is an offer which, when accepted, becomes a valid and binding contract. *Taylor v. Hartman,* 370 Pa. 146, 87 A.2d 785 (1952); and *Phillips v. Tetzner,* 357 Pa. 43, 53 A.2d 129 (1947). The acceptance of the offer must be exercised in the manner specified in the agreement before it becomes an absolute contract. *Phillips, supra.* "An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." RE-STATEMENT (SECOND) OF CONTRACTS § 25 (1979).

As Comment a to the above Restatement Section states as follows:

A promise which constitutes an option contract may be contained in the offer

itself, or it may be made separately in a collateral offer to keep the main offer open. Such promises are commonly called "options." But the word "option" is also often used for any continuing offer, even though revocable, and indeed is sometimes used to refer to any power to make a choice. To avoid ambiguity the phrase "option contract" is used in this Restatement.

As this Comment goes on to explain, there is a need for the offer in an option contract to be irrevocable in order to provide the offeree or purchaser with a dependable basis on which to decide whether or not to accept the offer.

■ Comment d states that "[t]he principal legal consequence of an option contract is that stated in this Section: it limits the promisor's power to revoke an offer. ... A revocation by the offeror is not of itself effective, and the offer is properly referred to as an irrevocable offer." Thus, it appears obvious to us that, in the case *sub judice*, insofar as the Debtor's power to revoke the offer was not limited in any fashion, either before or after acceptance, the language in question did not create an option contract. Paragraph 13 states unequivocally that "[i]f closing does not occur, *regardless of fault of either of the parties or of third parties*, the option shall expire unless the parties shall otherwise agree between each other in writing" (emphasis added). We find the language of this paragraph to be unambiguous, particularly as embellished by the clause emphasized above, which would otherwise be superfluous. A court may not, by the medium of interpretation, effectively rewrite an unambiguous contract. *See, e.g., In re Penn Central Transportation Co.,* 831 F.2d 1221 at 1224–28 (3d Cir.1987). We must, therefore, interpret this clause as it is written, i.e., as giving the Defendant the absolute discretion to decide whether to go through with the closing or not upon the Plaintiff's request for same.

Although analogous case law is scarce, the cases all conform to the view expressed in the Restatement. While factually involving other facets of option contracts, the cases all accept the premise that "[a]n option contract is a unilateral agreement *binding upon the party who executes it [the optioner or offeror]* from the date of its execution and becomes a contract inter partes when exercised according to its terms" (emphasis added). *Boyer v. Nesbitt,* 227 Pa. 398, 405, 76 A. 103, 105 (1910). *See, e.g., Cades v. Plumer,* 87 D. & C. 526 (Phila.Co.C.P.1953). (An option, which is supported by consideration, cannot be unilaterally rescinded during the period specified for acceptance.)

It is apparent to us that no viable and enforceable contract can exist if one party can unilaterally revoke or extinguish the purported contract. Since there is a marked dearth of case law on point respecting option contracts, we turned to Pennsylvania contract law generally on this point. We discerned that it is well-established that "[t]he acknowledgment of an agreement by a court does not necessarily require its enforcement. An agreement is an enforceable contract wherein the parties intended to conclude a binding agreement *and the essential terms of that agreement are certain enough to provide the basis for providing an appropriate remedy*" (emphasis added). *Linnet v. Hitchcock,* 324 Pa. Super. 209, 214, 471 A.2d 537, 540 (1984). *See also Channel Home Centers, Grace Retail v. Grossman,* 795 F.2d 291, 298 (3d Cir.1986) ("Under Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."); and *Philadelphia Fast Foods v. Popeyes Famous Fried Chicken,* 647 F.Supp. 216, 231 (E.D. Pa.1986) (court states that it is "hornbook law" that a contract is not enforceable unless the parties intended to be bound).

Hence, we readily conclude that the ability of either party to unilaterally refuse to go to closing evinces a clear intent not to be bound, and renders the purported option contract unenforceable. Moreover, the language of paragraph 13 strongly suggests that the purported option was created as a form of supplemental employment compensation to the Plaintiff, premised upon his

continuing employment and the maintenance of an amicable relationship between the parties in order for the option to be exercised and the purchase of property to occur. The contingent nature of such premises render the contract other than a valid and binding contract.

■ Another problem which punctures the validity of purported option is the lack of any consideration to support it. 32 PENNSYLVANIA LAW ENCYCLOPEDIA (hereinafter referred to as "PLE") 228–229 (1960). The lack of consideration is not necessarily fatal to the validity of an option, but it does mean that the optioner can revoke the option at any time prior to acceptance. *See Real Estate Co. of Pittsburgh v. Rudolph*, 301 Pa. 502, 153 A. 438 (1930). Such a flaw supports our analysis that a valid option contract had not been created between the parties.

Having concluded that a valid option contract did not exist, and that the Plaintiff is not a purchaser, we cannot find the Plaintiff to have any rights as a purchaser in possession pursuant to §§ 365(i)(1) and (2).

■ In the alternative, and assuming *arguendo* the existence of a valid option contract, we believe that, although we find the Plaintiff could arguably be said to have validly exercised his "option" by certified letter dated February 17, 1987, the "option" expired when the closing did not occur as specified in paragraph 13. After an option has expired, it cannot be enforced, and the parties are released from all liability thereunder. 32 PLE, *supra*, at 235. Obviously once the "option" expired by its own terms, the Plaintiff had no rights as a purchaser, as he had nothing to enforce.

We acknowledge that the Plaintiff has requested that the Defendant be required to assume or reject the clearly executory contract in issue within ten (10) days, pursuant to § 365(d)(2). However, we suspect that this request was made with the implicit assumption that this Court would find a valid option contract enforcable against the Defendant. We shall therefore refrain from ruling on this aspect of the Plaintiff's Complaint unless he indicates a desire for us to do so now, in light of this decision,

and lists this aspect of the Complaint for disposition, after at least ten (10) days notice to the Defendant. If the Plaintiff so wishes, we will establish a date by which the Defendant must assume or reject the lease aspect of the contract, keeping in mind, as we previously stated in *In re Grant Broadcasting of Philadelphia, Inc. (Fourth Opinion)*, 71 B.R. 891, 902 (Bkrtcy.E.D.Pa.1987), that we believe that the relevant factors to be considered in establishing a reasonable time should be "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, and the safeguards afforded these litigants," as were earlier set forth in *In re Lionel Corp.*, 23 B.R. 224, 225 (Bkrtcy.S.D.N.Y.1982). *See also Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2nd Cir.1982); *In re Flying W Airways*, 328 F.Supp. 1256, 1258 (E.D.Pa.1971); and 2 COLLIER ON BANKRUPTCY, ¶ 365.03[1] (15th ed. 1987).

An appropriate Order is attached.