Harper et ux. *v.* Quinlan, Appellant.

368

[REDACTED]

Argued April 22, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

[REDACTED]

*George T. Steeley,* with him *J. Stroud Weber,* for appellant.

*Joseph A. Ball,* with him *Smillie & Bean,* for appellee.

OPINION BY ROSS, J., July 19, 1946:

This case involves a petition to open a judgment in ejectment entered pursuant to a power to confess contained in a lease for real estate.

On September 24, 1942, the Fidelity-Philadelphia Trust Company, Trustee, then owner of premises No. 120 St. Paul's Road, Ardmore, entered into a written lease of that property with the defendant for a term of one year from October 15, 1942, at an annual rent of $780.00, payable at the rate of $65.00 per month. The lease provided for renewals for successive terms of one year, in

default of 60 days' written notice to terminate by either party prior to the expiration of any term, and in addition contained this further provision: "Notwithstanding the term of this lease Tenant agrees, in the event of the sale or an agreement for the sale of the herein demised premises, to vacate at any time upon receipt of 60 days written notice from Landlord so to do, and at the expiration of 60 days from service of such notice this lease is to be considered as absolutely determined." Defendant entered into possession of the property and continues in possession.

On December 8, 1944, the lessor, Fidelity-Philadelphia Trust Company, Trustee, sold and conveyed the property covered by the lease to the plaintiffs and assigned the lease to them by endorsement. The defendant knew that the property had been sold to the Harpers, was advised that the rent was payable to them, and did pay the monthly rental to them up to and including March 15, 1945.

On January 31, 1945, the defendant received written notice from the plaintiffs to deliver possession of the premises to them on or before April 15, 1945. On April 9, the plaintiffs refused to receive a check for $65.00. On or about May 14, 1945, the defendant forwarded that check, together with one dated May 14, and marked "Rent to 6/15/45", to the plaintiffs by registered mail, and they were accepted and used by plaintiffs on or about May 24, after consulting counsel. The plaintiffs, pursuant to counsel's instructions, on May 29, 1945, mailed a letter to the defendant acknowledging receipt of the above two checks and stating that the receipt of them was not to be construed as a waiver of their rights to proceed for possession, nor as a withdrawal of the notice to vacate. The letter contained a statement that they had permitted defendant to remain in the property while he was seeking another location, but were reserving the right to proceed for possession at any time. Three checks were subsequently sent by defendant to plaintiffs, in

June, July and August, which checks were used by plaintiffs. Checks thus sent in September and October were refused by plaintiffs.

On September 15, 1945, the plaintiffs, before a justice of the peace, commenced an action under the Act of December 14, 1863 (1864) 1125, for possession of the premises and judgment was rendered for them. Thereupon the defendant appealed to the Court of Common Pleas of Montgomery County, and that appeal is still pending.

The amicable action and confession of judgment in ejectment were entered on October 23, 1945, and execution issued the same day. On October 26, defendant presented a petition to open the judgment and a rule was issued. After the taking of testimony, the lower court refused to open the judgment, discharged the rule, and this appeal was taken.

In *Stevenson v. Dersam*, 275 Pa. 412, 119 A. 491, the court said, in considering an appeal from the refusal to open a judgment: "In passing upon the action taken below, it must be borne in mind that such an application is an appeal to the equitable power of the court, and the petitioner must make out a case which would justify a chancellor in entering the decree prayed for: Kline 'v. Fitzgerald Bros., 267 Pa. 468. The question for us to determine is whether there has been a rightful exercise of the discretion lodged in the lower court: Kaier v. O'Brien, 202 Pa. 153."

The appellant contends that the action before the justice of the peace and the pendency of an appeal from the judgment therein abate the present proceeding. As a general rule a party may have as many remedies as the law gives but with this qualification: that they be consistent. *Sheble v. Strong,* 128 Pa. 315, 18 A. 397. Ordinarily, a litigant may not, in the prosecution of his litigation, seek inconsistent remedies at the same time on the same cause of action. *Pennsylvania Co., etc., v. Harr,* 320 Pa. 523, 183 A. 37. However, it must appear that the remedies sought to be enforced are inconsistent

and not merely cumulative in order to have the selection of one remedy operate as a bar to the pursuit of the other or to compel the plaintiff to elect between remedies because of principles of election of remedies. *Patterson v. Swan*, 9 S. & R. 16. Distinct remedies cannot be used concurrently or alternately unless they are consistent not only in purpose but in kind. *Pott's Appeal*, 5 Pa. 500; *Pittsburgh Union Stock Yards Co. v. Pittsburgh Joint Stock Co.*, 309 Pa. 314, 163 A. 668. In the instant case, the two remedies involved—action before the justice of the peace and confession of judgment in ejectment under the lease—are consistent remedies not only in purpose but in kind. Each had the same object: possession of the leased property. Therefore, the remedies are cumulative and both may be resorted to. *Stevenson v. Dersam*, 275 Pa. 412, 119 A. 491, supra.

Appellant contends also that the acceptance by the landlords of rent after the expiration of the time set forth in the notice to quit constitutes a waiver of the notice, but with that contention we do not agree. As stated in Trickett on Landlord and Tenant, Second Edition, Section 301, "After a notice to quit, the lessor may agree with the tenant that the latter shall continue for another year. Whether because the notice would then be revoked, or on account of the new contract, the tenant would have a right to continue in possession for another year. It would be necessary to distinguish, however, between a willingness on the lessor's part after giving the notice to treat and actually treating with the tenant on one hand and coming to an agreement on the other. The former not resulting in an agreement, would not prolong the tenant's right of possession." In this case, there is no contention that there was any agreement between the parties that the notice to quit should be waived, or any agreement of any kind from which such intention could be inferred. In the letter of May 29, the landlords stated that they were permitting the tenant to remain on the property while he was seeking another

location. With the existing housing shortage, the landlords are to be commended for this attitude instead of being penalized, particularly in view of the fact that they had purchased the property for their own occupancy and on that basis had secured the necessary certificate from the Office of Price Administration permitting them to proceed with steps for eviction of the tenant.

The court below stated, "The actions of the parties do not convince us that any waiver was intended. So long as the defendant remained in the property, the plaintiffs were entitled to be compensated for the use thereof, and it matters not whether such compensation be called rent, use and occupation, or damages for detention." The letter of May 29 from the landlords to the appellant negatives any idea of an intention on the part of the landlords to waive their rights under the notice to quit. Although appellant denies receiving this letter, it is in evidence that it was properly addressed, stamped and mailed and, therefore, there is a presumption that it was received, and the court below was justified in not believing appellant's statement that he did not receive the letter. Consequently, the intention of the landlords not to waive the notice by accepting rent was communicated to the appellant.

In *Western Union Tel. Co. v. Pennsylvania R. Co.* (Circuit Court W. D. Pa.) 120 Fed. 362, it was held that payment and acceptance of rent, even after the expiration of a notice to quit, is not in itself a waiver on the part of the landlord, but is merely evidence to be considered in connection with the circumstances of the case.

Waiver is a matter of intention, and the fact that the appellant paid for the use of the property after the expiration of the notice to quit is only evidence of an intention on the part of the landlords to revoke or waive the notice, and under the facts in this case, it was not an abuse of discretion on the part of the court below to refuse to open the judgment on this ground.

Appellant contends finally that the notice to quit was not valid because given approximately 75 days before the time for vacation of the property instead of 60 days' notice, as provided in the lease. This contention does not merit discussion.

An application to open judgment is addressed to the court's sound discretion, and, on appeal, the order of the court below will only be reversed for clear abuse of discretion. *Earley's Appeal,* 90 Pa. 321; *Berkowitz v. Kass,* 351 Pa. 263, 40 A. 2d 691. There was no abuse of discretion in this case.

Order and judgment affirmed.