Brown, Appellant, *v.* Brown.

Argued November 16, 1948. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Fine, JJ.

*Harry Alan Sherman,* for appellant.

*John M. Gallagher,* for appellee.

OPINION BY HIRT, J., March 15, 1949:

Plaintiff is the record owner of land at 235 McKee Place in Pittsburgh; defendant is the tenant in possession of a dwelling house on the premises. Alleging defendant's refusal to vacate, on 60 days notice of the sale of the property to plaintiff, as well as because of the defendant's failure to pay the rent for the month of May 1948, plaintiff, complying with a court rule, sought to confess judgment against the defendant in an amicable action of ejectment under a provision of the lease authorizing such judgment on the lessee's default. The order of the court discharging plaintiff's rule for judgment is the sole error assigned. The order will be affirmed.

Joseph Brown and Alice Brown, the defendant, took possession of the premises as joint lessees on October 2, 1943, under a written lease from Potter Title and Trust Company, Trustee, the then owner. The defendant, at the hearing in the court below, asserted that she is the common-law wife of Joseph Brown, and although he repudiated the relationship yet it is undisputed that they lived together as man and wife on the premises and conducted a rooming house there following their

lease of the property. The original lease to them as joint lessees was renewed from year to year until they separated in August 1946. The subsequent and last renewal of the lease on March 26, 1947, for a term ending April 30, 1948, was in the name of defendant as sole lessee. On September 1, 1947, Potter Title and Trust Company sold the premises, subject to the lease, for approximately $16,000. Title was taken in the name of June Brown, the plaintiff-appellant, a daughter of Joseph Brown by a former marriage. It was he however who paid the entire consideration for the conveyance over and above a purchase money mortgage given by plaintiff.

Under a "Sale Clause" of the lease the tenant agreed: "To vacate the said premises in the case of sale of same at any time upon receiving sixty days' notice to do so" and on September 2, 1947, June Brown, the day after taking title to the property, notified defendant to vacate the premises in accordance with the above provision of the lease. The notice to quit given by plaintiff to the defendant admittedly was in proper form. But its legal effect was wholly nullified by this added postscript in plaintiff's handwriting and signed by her: "P.S. Alice: Don't be alarmed at this notice as my Dad will explain all to you, this is simply a requirement of the law in sale of any house. Resp. Ellen June Brown." A notice to vacate demised premises, to be effective, must be positive, decisive and free from ambiguity. *Fotterall v. Armour*, 218 Pa. 73, 66 A. 1001. That a notice to quit "must be clear, explicit and unequivocal, is well settled." *Spiess v. Simon*, 65 Pa. Superior Ct. 311; Trickett, Landlord and Tenant, 2d Ed. p. 340. Here the notice to quit was made so equivocal and misleading by the added postscript, as to negative every intention of plaintiff to compel defendant to vacate the premises under the sale clause of the lease. Moreover plaintiff accepted payments of rent without question for the period of seven

months after she had served defendant with the notice to quit. While acceptance of rent after the expiration of the period of notice to quit is not in itself a waiver, yet under the circumstances of this case the evidence of plaintiff's conduct was sufficient to support the conclusion of the lower court, in effect, that she had withdrawn her notice to vacate or had waived her right to proceed for possession on that ground. Cf. *Harper et ux. v. Quinlan,* 159 Pa. Superior Ct. 367, 48 A. 2d 113.

Defendant continued in possession after the expiration of the term of the last renewal of the lease. This holding over resulted in a continuation of the lease from month to month under a renewal clause to that effect contained in the lease. Defendant's default in the payment of the rent for May 1948, the second reason now urged for forfeiture, is equally without merit. Defendant mailed a check for the May rent which was received by the lessor. Through inadvertance defendant had failed to sign the check. Under the circumstances a forfeiture on that ground would be unconscionable and cannot be countenanced for that reason. Cf. *Thompson v. Christie,* 138 Pa. 230, 249, 20 A. 934. Plaintiff on receipt of the May check did not call defendant's attention to the fact that it was not signed. If she had, the omission undoubtedly would have been supplied. This plaintiff cannot work a forfeiture by mere acquiescence in defendant's unintentional default. Cf. *Jones v. Scott,* 209 Pa. 177, 58 A. 281. " 'Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulation of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture': Helme v. Phila. Life Ins. Co., [61 Pa. 107] page 111": *Cleveland et al. v. Salwen et al.,* 292 Pa. 427, 141 A. 155. Moreover after the alleged default, the rent for June was paid unconditionally by the defendant and was so accepted by plaintiff. The acceptance of the rent for June was evidence

of a subsistence of the landlord and tenant relationship and on that evidence alone the court well might have barred plaintiff from asserting a forfeiture based upon an alleged termination of the lease for non-payment of the rent for May 1948. *Newman v. Rutter*, 8 Watts 51.

Order affirmed.