## Juniata Park Housing Corporation v. Lass

*Barnes, Dechert, Price, Smith & Clark,* for plaintiff.

*Thomas Mullaney* and *John M. McNally, Jr.,* for defendant.

BOK, P. J., December 23, 1948.—Defendant tenant had a month-to-month lease at $53 per month, with the usual provision for termination upon 30 days' notice in advance.

On February 27, 1948, the landlord sent the tenant the following letter:

"JUNIATA PARK HOUSING CORPORATION
'M' & BRISTOL STREETS
PHILADELPHIA 24, PENNSYLVANIA
"February 27, 1948

"Mr. Irvin Lass
Apt. #193, 'M' & Bristol Streets
Philadelphia 24, Pa.
"Dear Mr. Lass:

"This is to inform you that the monthly rent on your apartment #193 will be changed to $60.75, effective in accordance with the requirements of your lease with us on the 10th day of April, 1948, subject only to the limitations of law.

"After this date the change will take effect immediately on the day it becomes legal under Federal and Local law to charge you this additional amount. As you know, rent control is being extended for one month to March 31, 1948. You also know that it is extremely likely that the government will extend rent control for a further period of fourteen months or so. If the government permits a blanket increase of 15%, effective after April 1, 1948 subject to the landlord's discretion, we wish to be able to start collecting it immediately without waiting for a later 30 day period which still would be required by paragraph 18 of your lease. Hence this notice now.

"It is extremely unlikely for Congress to act on the permanent bill much before the March 31st deadline. A review of newspaper accounts on the subject will keep you just as well informed as we are.

"All other terms of your lease will remain the same as heretofore.

Sincerely yours,<br>
"JUNIATA PARK HOUSING CORPORATION<br>
"Signed: William W. Jeannes<br>
William W. Jeannes<br>
Treasurer"

"WWJ:WB"

The tenant continued to pay a monthly rental of $53. These payments have continued until the present date.

On May 17, 1948, the landlord filed a petition with the Office of the Housing Expediter asking for an increase in the rental ceiling which was at that time $53 per month. On September 10, 1948, the Office of the Housing Expediter ordered that the maximum rent be changed from $53 to $62 per month. This order was made retroactive to May 17, 1948.

On September 14, 1948, the landlord sent the tenant the following letter:

"JUNIATA PARK HOUSING CORPORATION
'M' & BRISTOL STREETS
PHILADELPHIA 24, PA.

"September 14, 1948.

"Mr. Irvin Lass
Apt. #193, 'M' & Bristol Sts.
Philadelphia 24, Pa.

"Dear Mr. Lass:

"On February 27, 1948, you received notice from us stating that your rent would be increased to $60.75 on or after April 10th, 1948 subject only to the limitations of Federal and Local law.

"You have also received notice from the Office of Rent Control that the maximum rent on your apartment has been increased to $62.00 per month effective May 17, 1948 but subject to the rental agreement.

"You are hereby notified that on the 10th of November your rent will be $62.00 per month and that from the 17th of May your rent has been $60.75 per month. The sum of $34.75, to bring your account in balance up to September 20th, is now due and payable. Failure to make immediate payment will result in positive action on our part.

"We regret that these increases have been necessary.

"Sincerely yours,
"Signed: William W. Jeanes
William W. Jeanes
Treasurer"

"WWJ:WB"

"Schedule of rent due for
"October    $60.75
November  61.60
December  62.00"

On September 29, 1948, the landlord sent the tenant the following letter:

"CARL MACKLEY HOUSES
Juniata Park Housing Corporation
Philadelphia 24, Pennsylvania

"M and Bristol Streets             "Sponsored by
"Tel: JEfferson 3-1564      The American Federation
                           of Hosiery Workers
                           "September 29, 1948.

"Mr. Irving Lass,
Tenant, Apartment #193,
Carl Mackley Houses,
'M' & Bristol Streets,
Philadelphia 24, Pa.
"Dear Sir:

"This is to notify you that the lease between Juniata Park Housing Corporation, Lessor, and you, Lessee, for Apartment #193, Carl Mackley Houses, will terminate on October 4, 1948 for failure to pay the full amount of your rent for the period beginning May 17, 1948 until the present time. Your rent is $60.75 each month payable on the first of each month in advance.

"This notice is given in accordance with Clause No. 13 of your lease, dated March 10, 1941.

                        "Yours very truly,
             "Signed: William W. Jeanes
               William W. Jeanes, Treasurer
               Juniata Park Housing Corporation"

On October 8, 1948, the landlord entered judgment in ejectment against the tenant for failure of the tenant to pay the additional sum of $7.75 per month from May 17, 1948 to October 1, 1948.

On October 14, 1948, the tenant filed the petition to open the judgment.

By agreement, the parties have waived any technical points and have requested a decision on the merits. They also agree that the landlord could collect no more than $53 per month until May 17th, and that after

November 10th he may collect $62 per month. The question is, what is the status of the rent between May 17th and November 10th?

In our opinion, the judgment must be opened, since the landlord had a right to no more than $53 per month until November 10th.

The letter of February 28, 1948, is ineffective. In order to save a month's rent at the increased rate, the landlord tried to anticipate Congress' allowance of an advance by demanding that when, as, and if it happened the greater rent would be due at once, without a 30 days' notice. It gambled on Congress and lost, for the increase was never authorized. The letter was expressly made contingent upon a myth, and was based on the figure of $60.75, not $62.

The notice of the advanced rent is not a notice to quit (Hayes. v. Boisnot, 23 Dist. R. 467 (1914)), nor was it definite (17 Broadway Corp. v. Stoutenburgh et al., 64 N. Y.. S. (2d) 537 (1947)). It was most vague and indefinite, and gave the tenant no point of certainty on which to rest a decision of whether he should pay the new rent or move out.

We do not regard Harper et ux v. Quinlan, 159 Pa. Superior Ct. 367 (1946) as an apposite analogy. That case held that no waiver was intended, even though the landlord had accepted rent after the time set forth in the notice to quit had expired. If that be so, then Schmidt v. Leary, 187 Misc. 1039, 57 N. Y. S. (2d) 292 (1945), is equally inapposite, since the certificate permitting eviction was granted within the 60 days' notice period required by the lease. Even had the certificate not been granted until after the 60 days had expired altogether, it would have made no difference. The notice to quit affects the substantive rights of the parties: An OPA certificate to evict controls only the time when the remedy may be applied.

We accordingly do not think that the landlord waived its rights by accepting, interim, the only rental that it could legally charge. The point is, however, that the landlord set a particular higher figure that was never authorized and later succeeded in establishing a different figure by another method and as of a different date. It then entered judgment based on the unsupported figure, and the judgment is accordingly erroneous.

It must be remembered that the landlord set the date of April 10, 1948, for the increase to $60.75, provided Congressional action materialized. Since none did, there is no evidence of notice to the tenant that the increase would date from May 17th. The first indication that the tenant had of the later date is in the landlord's letter of September 14th, followed by notice dated September 29th of termination as of October 4th and entry of judgment on October 8th. We do not believe that the retroactive order of the Housing Expediter abolishes from a lease the requirement of 30 days' notice in advance or supplies it when none has been given in fact. Nor do we believe that a notice is valid when, based on a contingency, the date of increase is fixed at April 10th and the contingency doesn't happen to happen until May 17th. Definite legal rights and obligations cannot be made to depend on such wandering possibilities. Rent increase by anticipatory retroaction is a new idea in the strict law of leaseholds. Leases and confessions of judgment are highly technical and must be handled with precision.

Had the landlord been less headlong, it might have saved some or all of the increase. As the case stands, the whole is lost. An enlightening discussion of this point can be found in Aesop's Fables, "The Dog and The Shadow".

The rule to open the judgment is made absolute.