**In re TM CARLTON HOUSE PARTNERS, LTD. Debtor.**

**CARLTON RESTAURANT, INC., d/b/a Corned Beef Academy Plaintiff,**

**v.**

**TM CARLTON HOUSE PARTNERS, LTD. Defendant.**

**Bankruptcy No. 88–10774S.
Adv. No. 88–2296S.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 24, 1989.

Martin J. Weis, Dilworth, Paxson, Kalis & Hauffman, Philadelphia, Pa., for debtor.

Edward J. DiDonato, Aris J. Karalis, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for plaintiff.

Mark J. Packel, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Creditors' Committee.

Joanne Zack, Philadelphia, Pa., for Equity Security Holders.

James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.

Marvin Krasny, Philadelphia, Pa., Mark S. Lieberman, Chicago, Ill., for Skokie Federal Savings & Loan.

Michael S. Silberman, Philadelphia, Pa., for Bergs.

David Smith, Philadelphia, Pa., for Consolidated Capital.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The two closely-related matters before us concern the right of a Debtor-landlord to not only reject a lease, but also to terminate the right of its Tenant to retain its leasehold, on the basis of a lease clause providing that the lease shall terminate upon the expiration of the interest of the Lessor's predecessor in the premises. We hold that, by receiving rent and expressing no intention to terminate the lease in the four-year period between its purchase of the premises and the initiation of these matters, the Debtor has accepted the lease, and cannot now dispossess the Tenant as long as the Tenant abides by the terms of the lease. Therefore, while we grant the Debtor's motion to reject the lease, we deny its request to allow it to dispossess the Tenant.

The procedural history of the underlying Chapter 11 bankruptcy case is chronicled in our two prior major Opinions in this case, reported at 93 B.R. 859, 861–62; and 91 B.R. 349, 351–53. All that need be noted here is that an involuntary bankruptcy petition was filed against the Debtor, TM CARLTON HOUSE PARTNERS, LTD. (herein "the Debtor"), on March 7, 1988, which resulted in a consensual Order for Relief on March 31, 1988. The Debtor operates a commercial and residential complex, housing 42 commercial tenants and about 537 residential tenants, known as "the Carlton House," which covers an entire city block in downtown Philadelphia.

The first of the matters presently before us, filed on October 26, 1988, was a motion by the Debtor in the main case to reject the lease between it and CARLTON RESTAURANT, INC. d/b/a CORNED BEEF ACADEMY (herein "the Tenant"). After answering this motion on November 23, 1988, the Tenant, on December 7, 1988,

filed the above-entitled adversary proceeding against the Debtor, seeking a declaration that its lease could not be terminated and that it was entitled to offset any damages arising from the rejection of the lease against its rent payments under the terms of the lease, pursuant to 11 U.S.C. § 365(h)(2). The motion in the main case was continued several times and ultimately was listed for disposition on the date established for trial in the adversary proceeding, January 25, 1989. On that date, the parties agreed to submit the matters to us together on a Stipulation of Facts, to be filed on or before February 1, 1989, and Briefs to be filed by February 22, 1989 (Tenant opening), March 8, 1989 (Debtor), and March 15, 1989 (Tenant reply). The parties adhered to this schedule, and the matter is now ripe for decision.

The brief Stipulation of Facts submitted by the parties constitutes the entire record. We quote verbatim these portions of the Stipulation which are relevant to our disposition:

2. On or about April 1, 1981, [the Tenant] and Regency of Philadelphia (a predecessor to [the Debtor] and its management company Investor Realty Services, Inc.) executed a lease for approximately 3,600 square feet of space at the Property....

3. The lease provides for an initial term of five years and four automatic five-year renewal options, the first of which commenced in 1986.

4. This space is located at the Northwest corner of 18th and John F. Kennedy Boulevard, is accessible at the street level and is utilized by [the Tenant] to operate a public restaurant.

5. The required rent for this space is $19,800.00 per year. The rental income from this lease is approximately $5.00 per square foot. For purposes of this Stipulation, market rental for space similarly located is approximately $20.00 to $25.00 per square foot.

6. At all times relevant to the lease's negotiation and execution, [the Tenant] was represented by counsel.

7. In part, the ... lease provides:

"This Agreement of Lease and all its terms, covenants and provisions are and each of them is subject and subordinate to any lease or other arrangement or right to possession, under which the Lessor is in control of the demised premises, to the rights of the owner or owners of the demised premises and of the land or buildings of which the demised premises are a part, to all rights of the Lessor's landlord and to any and all mortgages and other encumbrances now or hereafter placed upon the demised premises or upon the land and/or the buildings containing the same; and the Lessee expressly agrees that *if Lessor's tenancy, control or right to possession shall terminate either by expiration, forfeiture or otherwise, then this lease shall, thereupon, give immediate possession and Lessee hereby waives any and all claims for damages or otherwise by reason of such termination as aforesaid* " (emphasis added)....

8. This lease was a negotiated lease for nonresidential commercial property.

9. [The Debtor] purchased the property located at 1801 John F. Kennedy Boulevard in or about October, 1984.

.     .     .     .     .

15. Prior to the filing of the instant bankruptcy Petition, no demand for termination of the lease or for possession of the leasehold interest was made upon [the Tenant].

16. No breach or default of the lease has been declared by the debtor.

There is no dispute that the disposition of these matters is controlled by 11 U.S.C. § 365(h), which provides as follows:

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, or a timeshare interest under a timeshare plan under which the debtor is the timeshare interest seller, the lessee or timeshare interest purchaser under such lease or timeshare plan may treat such lease or timeshare plan as terminated by such rejection, where the disaffirmance

by the trustee amounts to such a breach as would entitle the lessee or timeshare interest purchaser to treat such lease or timeshare plan as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee or timeshare interest purchaser has made with other parties; or, in the alternative, *the lessee* or timeshare interest purchaser *may remain in possession of the leasehold* or timeshare interest *under any lease* or timeshare plan *the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee* or timeshare interest purchaser *under applicable nonbankruptcy law.*

(2) *If such lessee* or timeshare interest purchaser *remains in possession as provided in paragraph (1) of this subsection, such lessee* or timeshare interest purchaser *may offset against the rent reserved under such lease* or moneys due for such timeshare interest for the balance of the term after the date of the rejection of such lease or timeshare interest, and any such renewal or extension thereof, *any damages occurring after such date caused by the nonperformance of any obligation of the debtor under such lease* or timeshare plan after such date, but such lessee or timeshare interest purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset (emphasis added).

The Tenant does not contest the Debtor's right to reject the lease. Indeed, given the depressed rent relative to the rental value of the space at present called for by the lease, the Debtor is undoubtedly exercising a wise business judgment in attempting to extricate itself from this lease. *See, e.g., In re Metro Transportation Co.,* 87 B.R. 338, 343 (Bankr.E.D.Pa.1988); *In re W. & L. Associates, Inc.,* 71 B.R. 962, 966–67 (Bankr.E.D.Pa.1987); and *In re Stable Mews Associates,* 41 B.R. 594, 596–600 (Bankr.S.D.N.Y.1984).

The real areas of dispute are whether the rights of the Tenant under the lease are "enforceable ... under applicable nonbankruptcy law" and, if so, whether the Tenant is entitled to remain in possession under the same favorable rental terms as exist in the present lease.

■ The issue of what rents the Tenant is liable to pay, assuming the enforceability of the lease, is the easiest to resolve. The Debtor argues that several cases interpreting the Bankruptcy Act, predecessor to the Bankruptcy Code, permitted a landlord-debtor rejecting a lease to recover the fair rental value of the premises when this figure exceeded the lease rental figure. *In re Schnabel,* 612 F.2d 315, 317 (7th Cir.1980); and *In re Freeman,* 49 F.Supp. 163, 165, 167–68 (S.D.Ga.1943).

However, we note that Collier has sharply criticized the reasoning of the *Freeman* case, as it interpreted the Act. 2 COLLIER ON BANKRUPTCY, ¶ 365.09, at 365–55 to 365–56 (15th ed. 1989). Even under the Act, it appears that the law of this jurisdiction was to the contrary of *Schnabel* and *Freeman. See In re Penn Central Transportation Co.,* 458 F.Supp. 1346, 1353–57 (E.D.Pa.1978) (FULLAM, CH.J.).

Furthermore, irrespective of the interpretation of the Act on this point, we must interpret the Code as *it* is written. *See United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, 109 S.Ct. 1026, 1030–33, 103 L.Ed.2d 290 (1989). As it is written, § 365(h)(1) authorizes a lessee to remain in possession "under any lease ... that is enforceable ... under applicable nonbankruptcy law." We believe that this is a clear statement of a Congressional intention to allow tenants of a debtor-landlord to continue to occupy premises under the terms of a lease between them, as written. Nonbankruptcy law of Pennsylvania certainly does *not* allow landlords to alter rentals in the middle of a lease-term because the market value of the leasehold has risen. Furthermore, § 365(h)(2) provides that the tenant may offset any damages from rejection "against the rent reserved under the lease." We do not see how this could be read to authorize the landlord to unilaterally alter the rent due under the lease.

Not surprisingly, the few cases interpreting § 365(h) have concluded that the tenant is entitled to remain under the same rental terms as are set forth in the lease. *See In re Upland/Euclid, Ltd.*, 56 B.R. 250, 252–55 (Bankr. 9th Cir.1985); and *In re Stable Mews Associates*, 35 B.R. 603, 606–08 (Bankr.S.D.N.Y.1983). We also believe that this interpretation is entirely consistent with our own overview of the several provisions of § 365 in which Congress expressed an intention to preserve and to protect the rights of parties in possession of realty. *See In re Clark*, 91 B.R. 324, 342 n. 26 (Bankr.E.D.Pa.1988); and *In re Fox*, 83 B.R. 290, 301 (Bankr.E.D.Pa.1988).

Therefore, we conclude that, if the Tenant is entitled to remain in possession of its space under its lease, it is entitled to do so on the same rental terms as are included in the lease, and may, under § 365(h)(2), offset any damages arising from rejection of the lease against the rental terms established in the lease.

■ The remaining issue, *i.e.*, whether the lease is enforceable under applicable nonbankruptcy law, is the more difficult to resolve. The Debtor argues that, pursuant to that portion of the clause of the lease set forth in paragraph 7 of the Stipulation which we have emphasized, at page 4 *supra*, it was, at all times since it purchased the Premises, entitled to terminate the Tenant's lease. It cites several cases for the apparently undisputed principle that such a clause, designated in the lease as a "subordination clause," is generally enforceable. *See, e.g., Landau v. Western Pa. Nat'l Bank*, 445 Pa. 217, 221–22, 282 A.2d 335, 338 (1970). It then cites two cases for the more doubtful principle that its failure to seek to terminate the Tenant's lease pursuant to the subordination clause in the four years prior to October 26, 1988, does not waive its right to do so now. *Brennan v. Shore Bros., Inc.*, 380 Pa. 283, 110 A.2d 401 (1955) (clause allowing landlords to terminate a lease on the death of any of them was enforceable even if not exercised until almost two years after the death of one co-landlord); and *Lyons v. Cantor*, 363 Pa.

413, 70 A.2d 285 (1950) (provision of a lease allowing termination for a certain period if the property was sold was held to allow termination in the period even though a sale was not in the period).

The response of the Tenant is that a purchaser generally takes title subject to any leases in effect; that the purpose of the subordination clause is merely to allow a landlord-mortgagor to subordinate his leases to his mortgages; and that it is not reasonable to interpret such a standardized, boilerplate clause as having such a dramatic effect. Despite our belief that clauses purported to effect forfeitures of leases should be construed narrowly, *see, e.g., In re C & C TV & Appliance, Inc.*, 97 B.R. 782, 786–87 (Bankr.E.D.Pa.1989), and that a tenant's right to possession is entitled to great respect, *see Fox, supra*, 83 B.R. at 294–95, 301, we cannot agree that the issue can be resolved in the Tenant's favor on this basis. Although the first portion of the subordination clause definitely does address the issue of the subordination of the lease to prior mortgages, the portion of the clause here which we emphasized at page 821 *supra* definitely addresses the rights of the Tenant in the case of the termination of its Landlord's right to ownership or possession. The first portion of the clause is not really very important: the rights of a tenant are, in any event, subordinated to the rights of a prior mortgagee. *See Reilly v. Firestone Tire & Rubber Co.*, 764 F.2d 167, 171 (3d Cir.1985); *Malamut v. Haines*, 51 F.Supp. 837, 842 (E.D.Pa.1943); and *Girard Trust Co. v. Dempsey*, 129 Pa. Super.471, 473, 196 A. 593, 594 (1938). Irrespective of whether subordination clauses generally have as significant an effect as the Debtor claims that the clause in issue here has, the instant subordination clause is unambiguous regarding the rights of a purchaser as to its predecessor's tenant. It provides that the purchaser has a right to terminate the lease, a right that a purchaser would apparently not otherwise have. Even though ambiguities in leases must be read against allowing forfeitures, we are compelled to read the contract clauses as they are written. *Cf. In re CG*

*Realty Investments, Inc.*, 79 B.R. 249 (Bankr.E.D.Pa.1987) (alleged option to purchase which is unambiguous and does not recite an enforceable option under state law does not give a lessee-alleged optionee of residential realty any rights under 11 U.S.C. § 365(i)).

The portion of the subordination clause in issue here is, therefore, totally enforceable. It provides the purchaser, in this case the Debtor, with a right to review the leases of its predecessor, in this case Regency of Philadelphia, and decide whether it wishes to accept or terminate the leases of its predecessor's tenants. The subordination clause subjected the Tenant to the decision of the Debtor as to whether it wished to retain the Tenant as its own tenant.

However, it is also clear that, if a purchaser accepts a tenant of his predecessor as his own tenant, then the tenant can enforce the rights to which he is entitled under his lease against the purchaser. *See Reilly, supra,* 764 F.2d at 173–75; *Sferra v. Urling,* 328 Pa. 161, 171, 195 A. 422, 427 (1937); *Sferra v. Urling,* 324 Pa. 344, 347–49, 188 A. 185, 186 (1936); *Curry v. Bacharach Quality Shops, Inc.,* 271 Pa. 364, 370–71, 117 A. 435, 438–39 (1921); *Brown v. Brown,* 164 Pa.Super. 350, 352–53, 64 A.2d 506, 507–08 (1949); and *Titzell v. Esworthy,* 65 D. & C. 2d 509, 511 (Chester Co. C.P. 1974).

Here, the Debtor, throughout the four years subsequent to its purchase of the realty in issue and until October 26, 1988, never sought to terminate the Tenant's lease and accepted the Tenant's performances under the lease, in which there had admittedly never been a breach. While we believe that a successor to a lessor should be accorded a reasonable time to assess its predecessor's leases in order to determine whether acceptance of these leases is desired before being found to have accepted same, it certainly appears to us that, if a purchaser wishes to terminate the lease, it should express that desire well within a period of four years. We therefore hold that the conduct of the Debtor here, receiving rent for about four years without any expression of a desire to terminate the lease, constituted an acceptance of the lease, binding it to the terms therein negotiated by its predecessor. *Compare Brown, supra* (acceptance found from a purchaser's receipt of rent for seven months and dispatch of a notice to quit by the landlord which included a "P.S." stating that the tenant should not be "alarmed" because the notice was "simply a requirement of the law in the sale of any house"); *Sferra, supra* (computation and receipt of rent by a purchaser pursuant to the computation formula for four years after the sale constitutes an acceptance); and *Curry, supra* (receipt of rent by a purchaser for a year after the sale constitutes an acceptance), *with Testa v. Lally,* 161 Pa.Super. 478, 55 A.2d 552 (1947) (dispatch of a letter by a purchaser indicating a desire to obtain possession, even though accompanied by receipt of rent, does not constitute an acceptance); and *Titzell, supra* (receipt of rent by a purchaser for two months, prior to the time that the purchaser was able to obtain a copy of the lease, is not an acceptance). The facts here obviously compare favorably with the above cases in which an acceptance was found, particularly *Sferra* and *Curry.*

We do not believe that *Brennan, supra;* or *Lyons, supra,* relied upon by the Debtor, hold to the contrary. Neither of these cases involved an issue of whether a successor in title accepted a pre-existing tenant, but, rather, they involved issues of how certain provisions in the respective lessees specifically allowing terminations of the leases in certain contingencies should be interpreted. The courts there simply rendered interpretations of lease provisions favorable to the respective landlords. Here, we are prepared to interpret the subordination clause in issue as giving the Debtor-landlord the rights which it contends the clause provided, as did the courts in *Brennan* and *Lyons.* However, even assuming *arguendo* that the clause means what the Debtor says it does, the Debtor's act of acceptance of the lease in issue precludes it from now seeking to disavow the lease, under applicable nonbankruptcy law.

Of course, this conclusion does not affect the Debtor's right to reject the lease pursuant to 11 U.S.C. § 365(d)(2). However, by reason of § 365(h)(1), the Tenant's lease is enforceable under applicable nonbankruptcy law, and the Debtor is not empowered to terminate the lease. By reason of § 365(h)(2), the Debtor is entitled to set off any damages occasioned to it by reason of the rejection of the lease against its rent due under the lease.

We shall therefore proceed to enter an Order granting the Debtor's motion to reject the lease in issue, but providing the Tenant the relief which it seeks in the adversary proceeding in accordance with its rights under § 365(h).

## ORDER

AND NOW, this 24th day of March, 1989, upon consideration of the Stipulation of Facts which the parties agreed would constitute the record and the Briefs in support of their respective positions submitted by the parties, in reference to the Debtor's motion to reject the purported lease between it and the Plaintiff in the main case and the above adversary proceeding, it is hereby ORDERED AND DECREED as follows:

1. The motion of the Debtor, TM CARLTON HOUSE PARTNERS, LTD., seeking to reject the Lease of April 1, 1981, between the Debtor and the Plaintiff in the above-entitled adversary proceeding, CARLTON RESTAURANT, INC., d/b/a CORNED BEEF ACADEMY, is GRANTED, and the aforesaid Lease is deemed REJECTED.

2. However, judgment is entered in favor of the Plaintiff and against the Debtor in the adversary proceeding.

3. It is declared that the Plaintiff may remain in possession of its present leasehold at 1801 John F. Kennedy Boulevard, Philadelphia, Pennsylvania, under the terms of the Lease of April 1, 1981, between the parties for the balance of the term and for any renewals or extensions of such terms.

4. It is further declared that the Plaintiff may set off against the rent reserved under such Lease any damages occurring after this date caused by the non-performance of any obligation of the Debtor under such Lease pursuant to its rejection of same.