**In re CARLTON RESTAURANT, INC. d/b/a Corned Beef Academy, Debtor.**

**Bankruptcy No. 92–15106S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 24, 1993.

Arthur P. Liebersohn, Philadelphia, PA, trustee.

Michael H. Kaliner, Jackson, Cook, Caracappa & Bloom, Fairless Hills, PA, for trustee.

Raymond H. Lemisch, Rosanne Miller, Adelman Lavine Gold & Levin, Philadelphia, PA, for debtor.

Martin J. Weis, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for New Carlton House Partners, Ltd.

Robert A. Rosin, Philadelphia, PA, for Sung Nam Kim.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The Trustee of a Debtor-tenant requests that this court approve an assumption and assignment of the Debtor's rights in a rental premises which remain after the landlord, a former debtor, rejected the Lease of the Premises. In what appears to be a matter of first impression, we hold that the rights of the Debtor-tenant under 11 U.S.C. § 365(h) cannot be assigned, and that therefore the Motion before us must be denied.

### B. HISTORY OF THE CASE

CARLTON HOUSE RESTAURANT, INC. ("the Debtor") filed the underlying voluntary Chapter 11 bankruptcy case on August 21, 1992. On the date of filing, the Debtor closed a "Corned Beef Academy" restaurant which it had been operating in a premises located on the first floor of the Carlton House, a large multi-use building covering an entire block in Center City Philadelphia ("the Premises"). The Debtor's right of possession of the Premises was under authority of an Opinion of March 24, 1989, of this court, reported at 97 B.R. 819 ("*Carlton I*"), in the bankruptcy case of the then-owner of the Carlton House, TM Carlton House Partners, Ltd. In *Carlton I,* we allowed the Debtor to continue in possession of, and to operate its business from, the Premises, under the terms of a five-year lease of April 1, 1981 ("the Lease"), with an option to renew for four consecutive five-year periods, at a rental rate (about $9.00 per square foot) which all parties agreed was well below the current market rate (testified to be about $25.00 per square foot).

On September 25, 1992, the Debtor moved to extend the time to assume or reject its possessory interest in the property for sixty (60) days past October 20, 1992, the date by which the Debtor was obliged to move to assume or assign a lease or it would have been "deemed rejected, and the trustee [would have been obliged to] immediately surrender such non-residential real property to the lessor." 11 U.S.C. § 365(d)(4). This motion was opposed by New Carlton House Partners, Ltd. ("New Carlton"), the reorganized former debtor-lessor. New Carlton further filed a motion for relief from the automatic stay to proceed in state court to evict the Debtor entirely from the Premises on October 27, 1992. In accordance with an agreement reached by the interested parties, including the Assistant United States Trustee, who had pressed for conversion of this case to a Chapter 7 case from its outset, we entered an Order of November 25, 1992, which converted the case to Chapter 7 on that date, and continued both the motion to extend the § 365(d)(4) period and the motion for relief from the stay until December 16, 1992. The Debtor was amenable to this agreement because it believed that, with a short extension, it could finalize an agreement to assign its interest in the Premises to a third party, and present same to a trustee.

Arthur P. Liebersohn, Esquire ("the Trustee"), was appointed on December 7, 1992. On December 16, 1992, the parties, including the Trustee, announced a settlement of the two pending motions, which was not memorialized until the court executed an agreed Order shortly after its submission on January 6, 1993. Under the terms of that Order, New Carlton was granted relief from the stay, effective January 31, 1993, but without prejudice to the Trustee to file a motion to assume and assign the Debtor's interest in the property before January 31, 1993, and extend the January 31, 1993, date until such a motion was resolved. On January 20, 1993, the Trustee filed a request to extend the Janu-

ary 31, 1993, deadline and the instant Motion for Approval of Sale and/or Assumption and Assignment of Assets Free and Clear of All Liens, Encumbrances, and Claims ("the Motion"), seeking to assign the Debtor's interest in the Premises and the Debtor's equipment and liquor license to Sung Nam Kim ("Kim"), or his corporate nominee, for $150,000.

The Motion, advocated vigorously by the Debtor and passively by the movant-Trustee, and opposed vigorously by New Carlton, was scheduled for a hearing on January 27, 1993. However, the matter was continued to February 10, 1993, on which date an extensive hearing was conducted. Although the Debtor and New Carlton had both submitted pre-trial legal Memoranda, they were accorded until February 17, 1993 (the Debtor and the Trustee; only the Debtor made a submission), and February 22, 1993 (New Carlton), to supplement their prior submissions.

## C. DISCUSSION

 Resolution of the Motion requires us to analyze the nature of the interest that a tenant retains after the rejection of its lease by a landlord-debtor pursuant to 11 U.S.C. § 365(h), which reads, in pertinent part, as follows:

(h)(1) If the Trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, ... the lessee ... under such lease ... may treat such lease ... as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee ... to treat such lease ... as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee ... has made with other parties; or, in the alternative, the lessee ... may remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law.

(2) If such lessee ... remains in possession as provided in paragraph (1) of this subsection, such lessee ... may offset against the rent reserved under such lease ... for the balance of the term after the date of the rejection of such lease ... and any such renewal or extension thereof, any damages occurring after such date caused by the nonperformance of any obligation of the debtor under such lease ... but such lessee ... does not have any rights against the estate on account of any damages arising after such date from any such rejection, other than such offset.

Collier explains the dearth of authority construing 11 U.S.C. § 365(h) thusly:

Problems concerning the rejection of unexpired leases of real property where the debtor is the lessor rather than the lessee are infrequently litigated, due no doubt to the fact that the bankruptcy or reorganization of a lessor will not ordinarily disturb existing leases, since the lessor's interest and the rents accruing thereon will be administered as definite assets of the estate ... (footnote omitted).

2 COLLIER ON BANKRUPTCY, ¶ 365.09, at 365-55 (15th ed. 1992). The issue arises here because the Lease provides for a rental which is far below the market rate, and which New Carlton and its predecessor definitely wished to "disturb."

Although the Debtor admits that its interest in the Premises is limited to that provided by 11 U.S.C. § 365(h), it argues that the Debtor, through § 365(h), has obtained all of the rights of a tenant under the Lease. One of the rights of a tenant, says the Debtor, is the right to assume the lease and assign it to a third party. *See In re Joshua Slocum, Ltd.,* 99 B.R. 250, 257–60 (Bankr.E.D.Pa.1989), *rev'd,* 922 F.2d 1081 (3rd Cir.1990) (restrictions on assignments of lease are subject to bankruptcy court modification). *Accord, id.* at 1090. Therefore, it argues that it should be allowed to enforce these rights and make the assignment to Kim.

In its Supplemental Brief, the Debtor adds an argument based upon this court's recent decision in *In re Walnut Associates,* 145 B.R. 489, 494–95 (Bankr.E.D.Pa.1992).

It contends that the rejection of the lease by New Carlton's debtor-predecessor did not invalidate, repeal, avoid, or terminate the underlying Lease contract, leaving it intact and subject to assignment.

We disagree with the Debtor's analysis. Rather, we believe that the rights of a lessee whose lease has been rejected by a lessor-debtor are narrowly circumscribed by the precise language of § 365(h). That Code section, quoted at page 355 *supra*, allows only a *lessee* the choice to remain in possession under the terms of the lease. It does *not* provide that the lease continues, but merely accords a *lessee* the choice to remain in a rented premises *under the terms* of the lease.

The policy reasoning behind our decision is that we believe that, while the Code limits the rights of a landlord-debtor, it does not purport to saddle it with a bad deal for any period beyond that required to prevent the dispossession of the lessee, pursuant to the policy of preventing forcible evictions of tenants in possession wherever possible. *Cf. In re Fox*, 83 B.R. 290, 298 (Bankr.E.D.Pa.1988). If a lessee, like the Debtor, has closed its doors and does not intend to utilize the leasehold itself in the future, the policy against preventing a forcible eviction vanishes. In that sense, the relationship between the remaining lessee and the debtor-landlord excuses the debtor-landlord from accepting performance by a party other than a lessee who remains in possession. *Compare* 11 U.S.C. § 365(c)(1).

The legal reasoning behind our decision devolves from the special treatment which is given to leasehold interests throughout 11 U.S.C. § 365. The most dramatic of these is set forth in 11 U.S.C. § 365(d)(4), where a debtor-tenant, even if in full compliance with the terms of a lease of nonresidential realty, may lose not only any personal leasehold rights, but also its right to possession of a premises, simply by failing to assume (or failing to move to extend the time for assuming or rejecting) a lease within sixty (60) days after a bankruptcy filing. *See, e.g., In re Morningstar Enterprises, Inc.*, 128 B.R. 102, 104–05 (Bankr.

E.D.Pa.1991); and *In re Boston Business Machines*, 87 B.R. 867, 872–73 (Bankr. E.D.Pa.1988). The first portions of the pertinent Code section, § 365(h)(1), contain a similar provision, which must prevail over any principles of state landlord-tenant law, expressly stating that a lessee whose lease has been rejected by a debtor-landlord may consider the lease *terminated* by the rejection. Where the tenant, like here, chooses not to terminate the lease, symmetry suggests that, at the point where the lessee is no longer in the premises, the debtor-landlord should be able to terminate the lease.

This result is not inconsistent with the conclusions reached in *Walnut Associates, supra*, or the authorities upon which that decision relies. We indicated, in *Walnut Associates*, that, if other applicable law (we somewhat carelessly used the term "state law" instead of the preferable "other applicable law") provides that a rejection *does* render a contract nonenforceable, then it *is* nonenforceable. 145 B.R. at 494. Here, the Code itself provides certain rights to a lessee whose lease has been rejected and, for the reasons we have stated, no more. In that case, the Code itself provides that the rejection terminates the parties' lease upon the lessee's departure from the leased premises.

One of the secondary authorities relied upon in *Walnut Associates*, M. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U.COLO. L.REV. 845, 902–06 (1988) ("Andrew"), discusses the termination of leases and, specifically, § 365(h) of the Code. Andrew notes that, when a debtor-lessee rejects a lease, the lease is terminated. *Id.* at 904. Meanwhile, the rights of a debtor-landlord who rejects a lease are said to be asymmetrical to those of the debtor-tenant because, although the debtor-landlord may terminate the lease, it also has a remainder interest in the leasehold which is compromised by the lessee's right of continued possession. *Id.* at 904–05. This discussion supports our conclusion that the lease between the parties is terminated by a rejection of the lease by the landlord-debtor, since that is the normal effect of rejection by a tenant-debtor, and all that remains

after the landlord's rejection is the lessee's personal rights to possession.[1]

The limited potentially-relevant case authority is not inconsistent with our result. If a tenant whose lease is rejected chooses to remain in possession, it should be able to do so under as many of the terms of the rejected lease as possible. *See In re Upland/Euclid, Ltd.*, 56 B.R. 250, 252–55 (Bankr. 9th Cir.1985); *In re Wood Comm. Fund I, Inc.*, 116 B.R. 817, 818 (Bankr. N.D.Okla.1990); *Carlton I, supra*, 97 B.R. at 822–23; and *In re Stable Mews Associates*, 35 B.R. 603 (Bankr.S.D.N.Y.1983). However, these cases do not suggest that the parties' rejected lease remains, with *all* rights of the tenant unconditionally intact, including the power to require a debtor-landlord to be shackled with a bad lease even after the lessee departs from the premises.

Our result is supported by the holding, in *In re Hawaii Dimensions, Inc.*, 47 B.R. 425, 427–28 (D. Hawaii 1985), that a rejection of a lease under § 365(h) terminates the underlying lease. It is also supported to a limited degree by the sole possibly relevant authority cited by New Carlton, *In re 6177 Realty Associates, Inc.*, 142 B.R. 1017, 1018–19 (Bankr.S.D.Fla.1992). While citing Andrew's law review article, apparently with approval, the *6177 Realty* court concludes that a lease rejected in a prior bankruptcy has indeed been terminated.[2] *Id.*

We should also briefly comment on two other issues raised at the hearing on the Motion. Firstly, New Carlton was very unimpressive in its efforts to discredit Kim as a "legitimate" assignee of the Lease, assuming that the Lease remained intact. New Carlton, inexplicably and contrary to its alleged normal policy, never investigated Kim's overall suitability as a tenant. *Cf. In re Joshua Slocum, Ltd.*, 99 B.R. 261 (Bankr.E.D.Pa.), *aff'd*, C.A. Nos. 89–4277,

89–4278, 89–4279 (E.D.Pa. Dec. 21, 1989) (landlord is not entitled to a separate preliminary hearing to qualify bidders for assignments of leases). The episodical "evidence" suggesting that stores that Kim previously owned in depressed areas of the City do not appear to meet the New Carlton's standards for maintenance by its tenants is of virtually no probative value.

More relevant, in our review, is the observation of who the beneficiaries of our granting of the Motion were likely to be. The Debtor's Schedules reflect secured tax debts of $44,750.79 and unsecured priority tax debts of $79,015.77. Most of these obligations appear to arise from unpaid withholding taxes, for which the Debtor's principal, Joseph Wolf, is admittedly personally secondarily liable. The Debtor's counsel estimated its own administrative claim as $40,000. The administrative claims of the Trustee and his counsel will undoubtedly add to this sum. New Carlton's unquantified administrative and prepetition rent claims would also have to be satisfied as an incident of any assumption of the Lease.

It is clear from this analysis that general unsecured creditors are most unlikely to receive any recovery from the $150,000 sale proceeds to be paid to the Trustee by Kim under the proposed assignment contract. The principal beneficiaries will be the Debtor's counsel, the Trustee and his counsel, and Wolf, whose contingent personal liabilities will be reduced by the payment of certain tax claims. New Carlton is apparently quite willing to forego receipt of the delinquent rent under the Lease if it can escape from the terms of the Lease.

The foregoing scenario explains the vigor of the Debtor's advocacy, and the passive participation by the Trustee. It is the Debtor's principal and counsel who will benefit from the granting of the Motion, not the Trustee's normal constituency, *i.e.*,

---

**1.** The Debtor acknowledged the effect of sections such as 11 U.S.C. § 365(d)(4) by moving to extend the time to assume or reject its rights under § 365(h). Presumably, it recognized that, had it failed to do so, whatever rights the Debtor had in the Premises would have been terminated.

**2.** The court does not, however, reference Andrew's discussion, 59 U.COLO.L.REV. at 904–05, where he expressly states that the rejection of a lease normally constitutes a termination of the lease.

unsecured creditors. It is difficult for us to become overly concerned about the rights of the Debtor's estate when the actual recipients of vindication of these rights will be the Debtor's principal and the Debtor's lawyers.

### D. CONCLUSION

As we read the Order of January 6, 1993, relief from the automatic stay is now granted to New Carlton, by effect of that Order, since the Trustee has not successfully obtained an order approving the assignment of the Lease. We will schedule a status hearing in this case on March 10, 1993, to tie up any loose ends and to obtain a blueprint for future administration of this case from the Trustee, hopefully including the preparation of a no-asset report, or recitation of an outside date for the filing of final audit papers, it this case is to be administered as an asset case.